**Cheryl A. MEYERS**

v.

**CLEARVIEW DODGE SALES, INC., and Chrysler Credit Corporation.**

**Civ. A. No. 73–963.**

United States District Court,
E. D. Louisiana.

Oct. 31, 1974.

Patrick D. Breeden, Russell & De-Russy, New Orleans, La., for plaintiff.

James K. Irvin, Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, La., for defendant Chrysler Credit Corp.

Robert E. McDonald, Dupepe & McDonald, Metairie, La., for defendant Clearview Dodge Sales, Inc.

HEEBE, Chief Judge:

This action was brought by the plaintiff against Clearview Dodge Sales, Inc., and Chrysler Credit Corporation to recover statutory penalties and attorney's fees for alleged violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226.1, et seq. The case is now before the Court on cross motions for summary judgment.

## THE FACTS

In June of 1972 the plaintiff, Cheryl Meyers, decided that she wished to purchase a 1972 Dodge from Clearview Dodge Sales, Inc., on credit. A "Retail Buyer's Order" which described the car, its sales price and the credit terms was filled out by the salesman and signed by Meyers. The sale was not finalized, however, at this point of the transaction. Since Clearview does not itself finance credit sales, it had to obtain credit approval for Meyers from one of the four or five lenders with which it regularly deals. In this case, Chrysler Credit Corporation agreed to finance Meyer's purchase. The information from the buyer's order was then fed into a machine which typed out and prepared a combination contract, disclosure statement, chattel mortgage and promissory note on a form prepared by Chrysler Credit Corporation. According to this document, Clearview appears as the seller and mortgagee of the car. However, the paper was then sold to Chrysler Credit Corporation at a discount, according to the terms of

the "Vehicle Financing and Repurchase Plan" in effect between Clearview and Chrysler Credit.

Plaintiff contends that five disclosures mandated by the Truth-in-Lending Act and its companion, Regulation Z, were not made and that both defendants are liable to her for her statutory penalties and attorney's fees.

### TAG, TITLE AND FEES

■ The "Retail Buyer's Order" shows that a $15.00 charge, purportedly covering "tag, title and fees," was added to the price of the car. However, on the disclosure statement this charge was neither itemized nor included as a component of the finance charge; instead, it was simply included as part of the cash price of the car. Defendants point to Reg. Z, 12 C.F.R. § 226.4(a), and argue that since all purchasers must pay this charge, regardless of whether the sale is for cash or credit, it is not a charge imposed "as an incident to or as a condition of the extension of credit" and, hence, need not be included in the finance charge. However, § 226.4(b) specifically states that "If itemized and disclosed to the customer," license, certificate of title and registration fees need not be included in the finance charge. As the court concluded in Starks v. Orleans Motors, 372 F.Supp. 928 (E. D.La.1974), "The options are clear; nowhere is there allowance for inclusion within the cash price." Inasmuch as this district court decision was recently affirmed by the Fifth Circuit, Starks v. Orleans Motors, 500 F.2d 1182 (1974), it is clear that the failure to either itemize the tag, title and registration charge on the disclosure form or to include it in the finance charge violates the Truth-in-Lending Act.

### DOCUMENTARY SERVICE FEE

■ The "Retail Buyer's Order" also indicates that a $25.00 "Documentary Service Fee" was added to the price of the car. This charge was treated on the disclosure statement in the same fashion as the "tag, title and fees"

charge. Instead of being separately itemized, it was merely included in the cash price of the car. Defendants again argue that this "fee" is imposed upon all buyers; since it, therefore, has no bearing upon the extension of credit, it need not be disclosed. This argument, however, fails to come to grips with the clear requirements of Regulation Z. Section 226.8(c)(4) states that in the case of a credit sale "all other charges, individually itemized which are included in the amount financed but which are not part of the finance charge" must be disclosed on the disclosure statement. The sale in question was a credit sale; the "Documentary Service Fee" was included in the amount financed and was not part of the finance charge. Thus, the failure to individually itemize this fee on the disclosure statement constitutes a violation of the Truth-in-Lending Act.

### FINDER'S FEE

■ According to the disclosure statement, the total amount of the finance charge was $791.16. The Vehicle Financing and Repurchase Plan required that Chrysler Credit put a certain percentage of that charge, amounting to $271.60, into a reserve account for Clearview when it purchased Meyers' note. Clearview's retention of that full amount according to the plan, is contingent upon a number of factors, including the ability of Chrysler Credit to collect fully on the note. Naturally, this contractual relationship provides Clearview with an incentive to allow Chrysler Credit to finance its car sales, and we do not quarrel with plaintiff's characterization of it as a kind of rebate or finder's fee. As such, Regulation Z required that it be separately described on the disclosure form. 12 C.F.R. 226.8(c)(8)(i) requires that "the total amount of the finance charge, with description of each amount included . . ." must be disclosed. 12 C.F.R. 226.4(a)(3) further provides that a "Loan fee, points, finder's fee, or similar charge" be included in the calculation of the amount of the

finance charge. The defendant strenuously argues that the finance charge consisted solely of precomputed interest and that since the "rebate" was not a separate, additional charge adding to Meyers' financial burden, it cannot be characterized as a "finder's fee."

■ First, the rebate surely qualifies as either a finder's fee or a similar charge, inasmuch as it is a charge borne ultimately by the purchaser as an incident to the extension of credit which is designed to induce Clearview to sell its notes to Chrysler Credit, the creditor. Regulation Z requires that each amount included in the finance charge be separately described precisely so that lenders cannot through precomputation, disguise such charges by including them in the calculation of "precomputed interest." The defendants argue at length that the disclosure of the "finder's fee" is not necessary since the failure to disclose in no way mislead the plaintiff as to the amount of the finance charge or the annual percentage rate. The simple answer to this contention is that the purpose behind the Truth-in-Lending Act is to inform the consumer not only of the true cost of credit, but also of the nature of the terms of credit offered to him, which certainly includes a description of the components of the finance charge.

Even if we were to agree with the defendants that a finder's fee was not involved in this transaction, and that the entire finance charge was composed of precomputed interest, we would, nevertheless, find the disclosure statement defective. If the finance charge was entirely composed of interest, then the consumer is entitled to know that fact under 226.8(c)(8)(i). *See,* Johnson v. Associates Finance, Inc., 369 F.Supp. 1121 (S.D.Ill.1974). The disclosure statement contains no such description under the heading "finance charge."

## ACCELERATION CLAUSE

■ The disclosure statement properly informs the debtor that a delinquency charge may be imposed in the event of a late payment but fails to mention the acceleration clause contained in the promissory note. Thus, by relying upon the disclosure form, the consumer would understand that he might have to pay a small delinquency charge in the event of a late payment but would not be aware that at the creditor's option the entire balance of the debt could be accelerated. The plaintiff contends that this omission violates Regulation Z, § 226.8(b)(4), which requires the disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

Defendant argues, first, that the acceleration clause may only be triggered by the debtor's default which would constitute a "subsequent occurrence" under 226.6(g). Under that section, the defendants argue that the possibility of acceleration need not have been disclosed since its happening would be contingent upon postdisclosure events or acts. This reading of the regulation would, however, render § 226.8(b)(4) a nullity, since all delinquency-type charges are contingent upon such postdisclosure acts, namely, the failure to make timely payments.

■■ Secondly, the defendants maintain that an acceleration clause does not constitute a "charge" under § 226.8(b)(4). This argument is grounded in a belief that § 226.8(b)(4) requires disclosure only of "default, delinquency, or similar charges" which result in the increase of the consumer's total financial obligation and that since Louisiana law provides for a rebate of interest in the event of acceleration, the acceleration clause need not be disclosed. However, the Truth-in-Lending Act is remedial in nature and in order that its important goal of providing consumers with much needed credit information be furthered, we must construe its terms liberally. Thomas v. Myers-Dickson Furniture Company, 479 F.2d 740 (5th Cir. 1973). We agree with the decision in Garza v. Chicago Health Clubs, Inc.,

347 F.Supp. 955 (N.D.Ill.1972), that the word "charge" can mean any pecuniary burden, expense or obligation. The acceleration of the balance of the debt against one who is late with a payment certainly results in a considerable immediate pecuniary burden for one attempting to avoid foreclosure. The Truth-in-Lending Act was intended to require the disclosure of exactly this type of credit information. *See,* Garza v. Chicago Health Clubs, Inc., *supra;* Johnson v. McCrackin-Sturman Ford, CCH Consumer Credit Guide, 381 F.Supp. 153 (W.D.Pa., 1974); Pollock v. Avco Financial Services, Inc., CCH Consumer Credit Guide, Para. 98,766 (N.D.Ga., July 1, 1974); Barksdale v. Peoples Financial Corp. of Alpharetta, CCH Consumer Credit Guide, Para. 98,738 (N.D.Ga., September 5, 1974).

■ Finally, the defendants argue that the acceleration clause was properly disclosed on Chrysler Credit Corporation's combination Chattel Mortgage, Disclosure Statement and Promissory Note form used in this transaction. This standard form is a one-page document, the face of which is divided into three sections by heavy blue lines. The section comprising the top one-fifth of the page is entitled "Chattel Mortgage," the section comprising the bottom one-fifth of the page is entitled "Promissory Note," and the large section in the middle is labeled "Disclosure Statement." The acceleration clause is contained in the "Promissory Note" but not in the "Disclosure Statement" section. The defendant claims that this arrangement satisfies the requirements of 15 U.S.C. § 1638(b) which requires that the requisite disclosures be made "before the credit is extended, and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser." This provision, however, has been clarified by § 226.8(a) of Regulation Z, which of course, was promulgated by the Federal Reserve Board pursuant to its broad grant of authority. Mourning v. Family Publications Service, Inc., 411 U.S. 356,

93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Section 226.8(a) clearly states that "All of the disclosures shall be made together . . . ." It would seem to be elementary that where a combination form such as the one here at issue contains a separate section entitled "Disclosure Statement," all the disclosures must be placed in that section to be considered having been made together. The result otherwise would tend to be confusing and misleading for the customer and, hence, at odds with the declared purposes of the Act.

## CONFESSION OF JUDGMENT

■ Regulation Z, § 226.8(b)(5), requires a description of any "security interests" held, retained or acquired by the creditor. "Security interest" is defined by Regulation Z, § 226.2(z) as "any interest in property which secures payment or performance of an obligation" including "consensual or confessed liens whether or not recorded." Plaintiff contends that the confession of judgment, which appears only in the Chattel Mortgage, is a security interest which had to be described in the Disclosure Statement. We agree with the defendants and the Federal Reserve Board that a Louisiana confession of judgment is not such an interest.

The Board's interpretation, § 226.202, reads, in pertinent part, as follows:

"(b) In some of the States, confession of judgment clauses or cognovit provisions are lawful and make it possible for the holder of an obligation containing such clause or provision to record a lien on property of the obligor simply by recordation entry of judgment; the obligor is afforded no opportunity to enter a defense against such action prior to entry of the judgment.

"(c) Since confession of judgment clauses and cognovit provisions in such States have the effect of depriving the obligor of the right to be notified of a pending action and to enter a defense in a judicial proceeding before judgment may be entered or recorded

against him, such clauses and provisions in those States are security interests under § 226.2(z) and for the purposes of §§ 226.7(a)(7), 226.8(b)(5), and 226.9. This is the case even if the judgment cannot be entered until after a default by the obligor."

The latest pronouncement by the Board concerning the application of Regulation Z, § 226.2(z), to a Louisiana confession of judgment is contained in its Public Position Letter #759 of February 28, 1974, which concludes:

" . . . a Louisiana confession of judgment clause is commonly used as a procedural device in conjunction with a mortgage on real or personal property to permit a creditor to avail himself of executory process. In such cases, the clause creates no security interest beyond that taken, and presumably disclosed under the mortgage.

"Based upon these factors and our understanding that under Louisiana law a judgment executed before default is void, we believe that a Louisiana confession of judgment need not be disclosed as a security interest under the provisions of § 226.8(b)(5) and § 226.202 of Regulation Z."

We have no quarrel with the Board's assessment of the effect of a Louisiana confession of judgment and its conclusion that in Louisiana confession of judgment is merely a procedural device which itself creates no security interest. *See,* Ross v. Brown Title Corp., 356 F.Supp. 595 (E.D.La.1973), aff'd 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1973). We note, further, that the Disclosure Statement does reveal that the "seller shall have a mortgage, lien and privilege in the property . . . " This is all that the law requires to be disclosed; the lender need not "give the consumer a short course in commercial transactions."

### WHO IS LIABLE?

Plaintiff asserts that both Clearview and Chrysler Credit Corporation are liable as "creditors" under the Act. The Act and Regulation Z define a "creditor" as one who regularly extends or arranges for the extension of credit, for which a finance charge is required, in connection with sales or loans to consumers. 15 U.S.C. § 1602(f) and Regulation Z, § 226.2(k) and (m). It is clear that Clearview is liable as a creditor under both definitions. It initially extended credit to the plaintiff as is evidenced by the subsequent assignment of the contract to Chrysler Credit. Furthermore, by regularly arranging for such assignments to Chrysler Credit and other lenders, which practice is absolutely essential to Clearview's selling cars on credit, Clearview is in actuality arranging for the extension of credit, which it did for plaintiff Meyers.

Chrysler Credit strenuously argues that it is merely a "subsequent assignee" of the plaintiff's note and, as such, entitled to the limited protection of 15 U.S.C. § 1641. Several courts have relied upon a "conduit" theory to reject Chrysler Credit's argument. Under the "conduit" theory, a finance company such as Chrysler Credit will be considered a creditor "when the seller merely serves as a 'conduit' for placing the finance companies' contracts with consumers and then regularly assigns the contracts to the finance companies." Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255, 1260 (N.D.Ga.1973), rev'd on other grounds, 499 F.2d 971 (5th Cir. 1974); Garza v. Chicago Health Club, *supra;* Starks v. Orleans Motors, Inc., *supra;* Owens v. Modern Loan Co., CCH Consumer Credit Guide, Para. 99,099 (W.D.Ky.1972). In construing a piece of remedial legislation such as the Truth-in-Lending Act, designed to protect consumers, courts must focus on the substance of a transaction rather than its mere form. The "conduit" theory seeks to accomplish just that. All three parties to this transaction were fully aware at the time of the purchase that Chrysler Credit was the true creditor. The forms used by Clearview were prepared by Chrysler Credit. Further, it

was necessary for Clearview to obtain credit approval for the plaintiff from Chrysler Credit or one of the other lenders with whom it regularly dealt before agreeing to the sale. In such a situation, where the seller works so closely with the finance company, the latter must be considered a "creditor" within the definition of the Act.

## STATUTORY DAMAGES AND ATTORNEY'S FEES

The statutory damages for a violation of the Truth-in-Lending Act are computed by doubling the amount of the finance charge imposed in connection with the transaction. The Act further provides for a minimum recovery of $100.00 and a maximum recovery of $1,000.00. Twice the finance charge imposed in this transaction is well over the statutory maximum. Accordingly, the Court finds Clearview and Chrysler Credit Corporation jointly and severally liable to the plaintiff for the sum of $1,000.00. We reject plaintiff's attempts to rewrite the Act so as to reap a larger recovery. We find nothing in the Act to support plaintiff's argument that she is entitled to multiply her statutory maximum penalty by either the number of defendants or the number of payments she must make under the note. Such an interpretation of the Act would produce windfalls for consumers who do not even have to prove any real damages in order to recover.

Plaintiff is also entitled to recover the costs of this action together with a reasonable attorney's fee. In determining the amount of the fee in this case, we have referred to the factors outlined by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), a Title VII case. We are further aware of the time and effort expended by plaintiff's counsel, much of which was occasioned by the defendants' strenuous and able defense. Considering all of these factors, plaintiff is entitled to recover the sum of $3,000.00 as a reasonable attorney's fee.

The plaintiff's motion for summary judgment is granted. The defendants' motions for summary judgment are denied.

Let judgment be entered accordingly.