Cheryl A. MEYERS, Plaintiff-Appellee-Cross Appellant,

v.

CLEARVIEW DODGE SALES, INC., Defendant-Appellant-Cross Appellee,

Chrysler Credit Corporation, Defendant-Appellant.

No. 75-1303.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1976.

---

**16.** 15 U.S.C. § 1640(a), *as amended* [emphasis added].

Robert E. McDonald, Metairie, La., for Clearview Dodge Sales.

Charles A. Snyder, James K. Irvin, New Orleans, La., for Chrysler Credit.

Sewell K. Loggins, Douglas N. Campbell, Atlanta, Ga., amici curiae for Beneficial Finance Co.

Patrick D. Breeden, New Orleans, La., for Cheryl Meyers.

Before WISDOM and MORGAN, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

This is an appeal from an award of statutory penalties and attorneys' fees to appellee, Cheryl A. Meyers, by the United States District Court for the Eastern District of Louisiana, for various violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z thereunder, 12 C.F.R. § 226.1 *et seq.*, by appellants Clearview Dodge Sales, Inc. (Clearview), and Chrysler Credit Corporation (Chrysler Credit) in the credit sale of an automobile. The case presents a number of significant questions concerning the interpretation of several provisions of the Act and Regulation Z.

On June 23, 1972 Cheryl Meyers (Meyers) visited the showroom of Clearview, was shown various automobiles, and agreed to purchase a 1972 Dodge Swinger if proper financing was available. Having made her selection, appellee signed a Retail Buyer's Order, describing the automobile, its sales price, the general credit terms, and other conditions of the sale. However, the sale was not finalized at this point in the transaction. Since Clearview did not finance credit sales itself, it had to obtain credit approval for appellee from one of the four or five institutional lenders with which it regularly dealt. Therefore, Meyers also filled out and signed a credit application to be used by Clearview in its attempts to secure financing for her purchase. This credit application was submitted to Chrysler Credit for its approval, and following a credit check, Chrysler Credit agreed to purchase the appellee's note and installment contract from Clearview if later presented to it properly executed. Clearview then notified appellee that her credit had been approved, and using the information from the retail buyer's order, prepared a combination contract, disclosure statement, chattel mortgage and promissory note on a form supplied by Chrysler Credit. Appellee returned to Clearview's place of business on June 26, 1972, to sign the retail installment contract and pick up her car.

The document Meyers signed consummating this credit transaction was a standard Chrysler Credit form entitled "Sale and Chattel Mortgage." According to this document, Clearview appears as the seller and mortgagee of the car. However, the installment contract was immediately sold to Chrysler Credit at a discount, according to the terms of the "Vehicle Financing and Repurchase Plan" in effect between appellants. Chrysler Credit was not identified as a creditor, or otherwise, on the face of this document.

On April 13, 1973, appellee commenced this action against Clearview, as a credit arranger, and Chrysler Credit, as a credit extender, contending that five disclosures mandated by the Truth in Lending Act and Regulation Z had not been made and that both defendants were liable to her for statutory penalties and attorney's fees. The case was submitted to the district court on cross motions for summary judgment and stipulated facts. On October 31, 1974, the

court below granted plaintiff's motion for summary judgment and found appellants jointly and severally liable to the plaintiff for the statutory penalty and attorney's fees. *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La.1974).

The district court found that both appellants were "creditors" as defined by the Act and Regulation Z, and were therefore jointly responsible for making the required disclosures. Chrysler Credit alone appeals this determination. We agree.

The lower court further found the following specific violations of the disclosure requirements of the Truth in Lending Act and Regulation Z:

(1) the failure to disclose the "finder's fee" paid to Clearview by Chrysler Credit as an element of the finance charge as required by section 226.4(a)(3) of Regulation Z;

(2) the failure to itemize the amounts charged for "tag, title and fees" and for "Documentary Service Fee" under the "other charges" portion of the disclosure statement as required by section 226.4(b) of Regulation Z; and

(3) the failure to disclose the creditor's right of acceleration as a "default, delinquency, or similar charge payable in the event of late payment" as required by section 128(a)(9) of the Act, 15 U.S.C. § 1638(a)(9), and section 226.8(b)(4) of Regulation Z.

Both appellants contest these findings. We affirm the district court's finding with respect to violation (2) above. However, we reverse as to findings (1) and (3).

On cross-appeal, appellee challenges the district court's determinations (1) that the creditor's confession-of-judgment provision need not be disclosed as a section 226.2(gg)

"security interest," and (2) that appellee is entitled to but a single award of the statutory penalty. We agree that these findings are correct, and affirm both holdings.

The appellee also seeks an award of attorney's fees for work done on appeal. In accordance with *Thomas v. Meyers-Dickson Furniture Company,* 479 F.2d 740, 748 (5th Cir. 1973), we conclude that attorney's fees are authorized for appellate legal work, and direct the district court to award such fees it determines to be reasonable.

### I. *Chrysler Credit Corporation: Creditor or Subsequent Assignee.*

Appellant Chrysler Credit insists that the district court erred in classifying it a creditor in this consumer credit transaction. It strenuously argues that Clearview extended credit to Meyers, and that it was merely a "subsequent assignee" of the original creditor. Appellee, on the other hand, contends that both appellants are creditors and should be separately liable for failing to make the required disclosures. Chrysler Credit seeks to be classified as a "subsequent assignee" in order to avail itself of the limited protection of 15 U.S.C. § 1641.[1]

Therefore, the first issue raised by this appeal is whether, under the undisputed facts of this case, Chrysler Credit is an original creditor in this transaction or a "subsequent assignee" creditor. The district court correctly concluded that Chrysler Credit's status turned entirely upon the characterization of Clearview's role in this credit transaction. The Act and Regulation Z define a "creditor" as one "who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit. . . ." Regulation Z, 226.2(s), 12 C.F.R. § 226.2(s)

1. Section 131 of the Truth in Lending Act, 15 U.S.C. § 1641, does not define "subsequent assignee" but does limit their liability in the following manner:

Except as provided in section 1635(c) of this title and except in the case of actions brought under section 1649(d) of this title, in any action or proceeding by or against any

subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and,

(1976).[2] To "arrange for the extension of credit"

> means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit.[3]

As the appellant correctly states, these definitions increase the number of persons generally responsible for making truth-in-lending disclosures by categorizing as creditors additional persons, i. e., credit arrangers, who do not fit the traditional definition of "creditor." Therefore, in some consumer credit transactions there are multiple "creditors," a credit arranger and a credit extender. Where there is a credit arranger there must obviously be a credit extender, and both are original creditors under the act and Regulation Z. Neither the Act nor Regulation Z define "subsequent assignee," but it is clear that an original creditor cannot be a subsequent assignee.

The district court found that both Clearview and Chrysler Credit were "creditors" in this transaction, and we agree to the extent that we view them as joint creditors, since there was in essence but one credit transaction; however, each is obligated to make the disclosures mandated by the Act and Regulations. It is undisputed that Clearview is in the business of selling automobiles and does not ordinarily finance credit sales itself. Instead, when the purchaser has not made financing arrangements of his own, Clearview takes a financial statement and submits it to several institutional creditors with whom it regularly deals for approval of the purchaser's credit. If any one of the lenders approves the customer's credit, Clearview completes the sale and immediately assigns the commercial papers to an approving lender. This practice of prearranging the assignment of commercial paper is a regular and essential part of Clearview's business and is, as the district court concluded, tantamount to arranging for the extension of credit. *Meyers, supra,* at 728. Consequently, in this factual setting, both appellants are "creditors" under the Act, Clearview as the credit arranger and Chrysler Credit as the credit extender.

Chrysler Credit argues, however, that additional undisputed facts support a conclusion that it is merely a "subsequent assignee" within the meaning of that term in section 1641 of the Act. Appellant insists that Clearview is the original creditor in this transaction, since at the moment the transaction was consummated Clearview was the holder of the note and chattel mortgage, and consequently the only one to whom appellee was obligated. However, appellant's argument elevates form over substance in an effort to avoid the realities of the credit transaction. Clearview never assumed any of the risks normally associated with the extension of credit in its dealings with appellee. By prearranging the assignment of the installment contract to Chrysler Credit, or any other institutional lender, Clearview merely arranged to sell the automobile for cash to be supplied by another. There is little doubt that in this transaction "credit," "the right granted by a creditor to a debtor to defer payment of

---

unless the violation is apparent on the face of the statement, of compliance with this part.

**2.** Formerly 12 C.F.R. § 226.2(m) (1975); *see also,* Truth in Lending Act § 103(f), 15 U.S.C. § 1602(f) (1976).

**3.** 12 C.F.R. § 226.2(f) (1975). In late 1975, section 226.2 of Regulation Z was amended in the following pertinent manner:

> (h) "Arrange for the extension of credit" means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit
>
> (1) Receives or will receive a fee, compensation, or other consideration for such service, or
>
> (2) Has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit.

debt or to incur debt and defer its payment," [4] was extended by Chrysler Credit and arranged for by Clearview. *See Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86 (8th Cir. 1976); *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La.) *aff'd,* 500 F.2d 1182 (5th Cir. 1974).

## II. *Finder's Fee Disclosure.*

■ The "Vehicle Financing and Repurchase Plan" in effect between appellants is further evidence that Clearview is properly classified as a credit arranger in this transaction. Pursuant to this agreement Clearview received compensation for the services it rendered as a credit arranger in the form of a conditional rebate of a portion of the finance charge assessed against the purchase. The face value of the Meyers note assigned to Chrysler Credit was $4088.16, representing an unpaid principal balance of $3297.00 and a "Finance Charge" of $791.16. When Clearview sold the Meyers contract to Chrysler Credit, it received "an amount equal to the 'unpaid cash balance' of the contract," as per the above agreement, and an additional amount, $271.60, was set aside in a reserve account. Clearview's retention of the full amount in this account was contingent upon a number of factors, including the ability of Chrysler Credit to collect fully on the note. This $271.60 is clearly that "fee, compensation, or other consideration" received by the credit arranger for his services to the credit extender.[5]

The district court, however, characterized this $271.60 as a finder's fee, and found that it should have been disclosed as an element of the finance charge under sections 226.-4(a)(3) and 226.8(c)(8)(i) of Regulation Z.

Section 226.8(c) of Regulation Z provides for the disclosures that must be made in the case of a credit sale, and subsection (8)(i) of that section requires the disclosure of "the total amount of the finance charge, with description of each amount included . . . ."

The phrase "amount of the finance charge" is defined in section 226.4(a) of Regulation Z as

the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

(1) *Interest, time price differential, and any amount payable under a discount or other system of additional charges.*

(2) Service, transaction, activity, or carrying charge.

(3) *Loan fee, points, finder's fee, or similar charge.*

(4) Fee for an appraisal, investigation, or credit report.

. . . . [Emphasis added].[6]

Appellee characterizes the fee or rebate received by Clearview as a subsection (3) "finder's fee or similar charge" and thus an element of the finance charge that must be separately described under Regulation Z, § 226.8(c)(8)(i). By definition, a "finder's fee" is the fee paid the person who initiates a business transaction between principals,[7] and section 226.4(a) makes such a fee includable in the amount of the finance charge only if it is "imposed directly or indirectly by the creditor *as an incident to or as a condition of the extension of credit.*"[8] The district court found that the

---

4. Truth in Lending Act § 103(e); 15 U.S.C. § 1602(e) (1970).

5. *See* 12 C.F.R. § 226.2(h)(1) (1976); note 3 *supra.*

6. 12 C.F.R. § 226.4(a) (1976); *see* Truth in Lending Act § 106(a), 15 U.S.C. § 1605(a) (1970).

7. *See Webster's New World Dictionary,* at 523 (2d ed. 1972).

8. *See* Federal Reserve Board Staff Opinion Letter of February 19, 1976, No. 1007, reproduced in 4 CCH Consumer Credit Guide, ¶ 31,341, at p. 66,616 (1976). Letter No. 1007 provides in pertinent part that

Subject to certain specified exceptions, any charge imposed by the creditor and payable by the customer as an incident to or a condition of the credit extension must be disclosed as part of the finance charge. All charges, including finder's fees, must be measured

charge was indirectly borne by the purchaser, *Meyers, supra,* at 726, but did not find that it was *imposed* by the creditor as an incident *to* or as a *condition* of the extension of credit. It found instead that the rebate was designed to induce Clearview to sell its notes to Chrysler Credit, *id.*

Keeping in mind that the nomenclature of the regulation is tailored to familiar practices of those engaged in the business of extending credit, we resort to the doctrine, *noscitur a sociis,* for explication of the nature of the "finder's fee" to which the regulation is addressed. Both the "loan fee" (common to the small loan industry) and "points" (common to the real estate industry) are front end charges imposed by the creditor and payable by the customer. Clearly they directly affect the cost of credit. On the other hand, characterization of the compensation received by Clearview from Chrysler Credit as a "finder's fee" is alien to the rational meaning of the regulation. The lower court erred in holding that failure to disclose it resulted in a violation.[9] We reverse.

█ The district court alternatively held that appellant's disclosure statement violated section 226.8(c)(8)(i) for the additional reason that it failed to describe the single element of the finance charge, *i. e.,* precomputed interest. At the time of the district court's opinion there was some authority for this conclusion, *see Johnson v. Associates Finance, Inc.,* 369 F.Supp. 1121 (S.D.Ill. 1974);[10] however, a recent interpretation of section 226.8(c)(8)(i) by the Federal Reserve Board has resolved this matter in the appellant's favor. This interpretation found at section 226.820 of Regulation Z was published on December 1, 1975, and provides in pertinent part as follows:

> against this general definition in § 226.4(a). The items mentioned in §§ 226.4(a)(1) through (8) provide examples of the types of charges which would normally come within this general rule.

A description of the amounts included in the finance charge is necessary to carry out the purposes of the Act only when the total charge includes more than one element. Therefore, where only a single type of charge comprises the finance charge, disclosure of the total dollar amount of such charge, using the term "finance charge," complies with the requirements of §§ 226.8(c)(8)(i) and 226.-8(d)(3), and there is no further requirement under those sections that the single type of charge be otherwise identified or described.[11]

This interpretation, the Federal Reserve Board's construction of its own Regulation Z,[12] is entitled to great deference and it compels our reversal of the district court's alternative holding. *See, e. g., Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 976 (5th Cir. 1974).

III. *"Tag, Title and Fees"—"Documentary Service Fee" Disclosure.*

█ The "Retail Buyer's Order" that was filled out by the salesman and signed by appellant at the time she agreed to purchase the car showed $3295.00 as the price of the car, a demonstrator with 8,680 miles. This price included a tune-up, clean-up and an extension of the new car warranty. To this price was added a $25.00 "Documentary Service Fee," $199.20 in sales taxes, and $15.00 for "Tag, Title & Fees" resulting in a "Total Cash Delivered Price" of $3534.20. In the disclosure statement appellants simply entered this "cash delivered price" as the "cash price" of the automobile. Appellee insisted below that this practice was in violation of Regulation Z, §§ 226.4(b) and 226.8(c)(4). The district court agreed. *Meyers, supra,* at 725. We affirm.

**9.** *See Main v. Faller Ford, Inc.,* No. 74–337 (W.D.Pa., April 22, 1976).

**10.** *See also Ives v. W. T. Grant Co.,* 522 F.2d 749 (2d Cir. 1975).

**11.** 12 C.F.R. § 226.820 (1976).

**12.** "Great deference is especially due the Federal Reserve Board's construction of its own Regulation Z because of the important interpretative and enforcement powers granted this agency by Congress under the Truth in Lending Act." *Bone v. Hibernia Bank,* 493 F.2d 135, 139 (9th Cir. 1974).

Regulation Z, § 226.8(c) sets forth the specific disclosures to be made in a credit sale transaction, and prescribes the manner in which such disclosures are to be made. That section provides, in pertinent part, as follows:

> In the case of a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:
>
> (1) The cash price of the property or service purchased, using the term "cash price."
>
> (2) The amount of the downpayment itemized, as applicable, as downpayment in money, using the term "cash downpayment," downpayment in property, using the term "trade-in" and the sum, using the term "total downpayment."
>
> (3) The difference between the amounts described in subparagraphs (1) and (2) of this paragraph, using the term "unpaid balance of cash price."
>
> (4) All other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge.
>
> (5) The sum of the amounts determined under subparagraphs (3) and (4) of

this paragraph, using the term "unpaid balance."

.    .    .    .    .    .[13]

"Cash price" is defined, for the purposes of this section as

> The price at which the creditor offers, in the ordinary course of business, to sell for cash the property or services which are the subject of a consumer credit transaction. It may include the cash price of accessories or services related to the sale such as delivery, installation, alterations, modifications, and improvements, and may include taxes to the extent imposed on the cash sale, *but shall not include any other charges of the types described in § 226.4*.[14] [Emphasis added].

Appellants assert that they have fully complied with the mandates of § 226.8(c), since the "cash price" disclosed was the price a purchaser for cash would pay for the car. However, the specific disclosure requirements of section 226.8(c) and 226.4(b) limit the definition of "cash price" to the price of the property, the automobile (accessories, delivery and installation charges included),[15] plus the sales tax thereon.[16] Section 226.4(b)(4) clearly requires the itemization and separate disclosure of the charge for "tag, title and fees."[17] *See Starks v.*

13. 12 C.F.R. § 226.8(c) (1976).

14. *Id.*, § 226.2(n).

15. According to the "Retail Buyer's Order" the "cash price" of the car was $3295.00.

16. After the documentary service fee was added to the "cash price" of the car, and sales tax figured on that amount ($3320), appellee was charged a sales tax of $199.20.

17. *Id.*, § 226.4(b)(4). That section states:

> If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
>
> .    .    .    .    .
>
> (4) License, certificate of title, and registration fees imposed by law.

Section 226.4(b) was promulgated to implement the disclosure requirements of section 106(d) of the Truth in Lending Act, 15 U.S.C. § 1605 (1970). That section provides:

> (d) If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charged with respect to that transaction:
>
> (1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
>
> (2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction, if the premium does not exceed the fees and charges described in paragraph (1) which would otherwise be payable.
>
> (3) Taxes.
>
> (4) Any other type of charge which is not for credit and the exclusion of which from the finance charge is approved by the Board by regulation.

*Orleans Motors, Inc.*, 372 F.Supp. 928 (E.D. La.), *aff'd* 500 F.2d 1182 (5th Cir. 1974). Additionally, since the "Documentary Service Fee" was included in the amount financed, but was neither a fee for "service related to the sale" nor a part of the finance charge, it should have been separately disclosed pursuant to Regulation Z, § 226.8(c)(4).[18] The failure to individually itemize these charges constituted a violation of the Truth in Lending Act.

### IV. *Acceleration Clause Disclosure.*

■ On the reverse side of appellants' "Sale and Chattel Mortgage" form in paragraph 3 of the "Additional Terms and Conditions," appeared an acceleration clause. While the disclosure statement portion of appellants' form properly informed the debtor that a delinquency or late charge would be imposed in the event of late payment, the disclosure statement failed to reveal the creditor's right to accelerate the debt in the event of default. The district court found that this omission violated Reg-

ulation Z, § 226.8(b)(4) which requires the disclosure of "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

The district court's reasoning on this issue has been carefully examined and rejected by this panel in the recent case of *Martin v. Commercial Securities, Inc.*, 539 F.2d 521 (5th Cir. 1976). Consistent with that opinion, we reverse.

### V. *Cross-appeal: Confession of Judgment Disclosure.*

■ Appellee challenges on cross-appeal the district court's holding that the confession of judgment provision appearing only in the chattel mortgage was not a security interest which had to be described in the Disclosure Statement pursuant to Regulation Z, §§ 226.2(gg), 226.8(b)(5), and 226.202. The district court, relying upon a Staff Opinion Letter of the Federal Reserve Board dated February 28, 1974,[19] concluded

**18.** The following FRB staff opinion letter was brought to the court's attention by appellants in support of their argument that these charges need not be disclosed. However, upon close examination it clearly supports the conclusion reached above.

"[This is on] the proper treatment under Regulation Z for certain charges assessed by an automobile dealer in connection with the sale of an automobile. The types of charges in question can be described in five different categories, as follows:

"(1) a title application fee which the dealer collects as a designated agent of the State, a portion of which is forwarded to the State, with the dealer retaining a portion as his commission in accordance with State law;

"(2) an inspection fee required by state law;

"(3) a documentary and make-ready fee retained entirely by the dealer, which is intended to cover expenses incurred by the dealer in upkeep of the car prior to sale as well as fees for notarizing the various documents prepared in each transaction;

"(4) State sales tax; and

"(5) a statutory fee of $2.50 for obtaining the release of lien when the indebtedness is paid.

"The first four categories of charges are assessed whether the transaction is for cash or is financed. The fifth category is assessed only when the transaction is financed. The question is whether the fees should be includ-

ed in the 'cash price' or separately disclosed under 'other charges' under § 226.8(c).

"Since charges (2), (3) and (4) are not imposed as a condition of or incident to the extension of credit, and need not be itemized to be excludable from the finance charge under § 226.4(b), they may be included in the cash price or *they may be included as 'other charges' (if financed)*. However, in the case of charges (1) and (5), *such charges must be itemized, and disclosed to the customer under § 226.4(b) in order that they may be excluded from the finance charge. If such charges are financed* (rather than being paid in cash), *they should be disclosed as 'other charges.'*" [emphasis added]. F.R.B. Letter No. 623 by G. Garwood, August 9, 1972, CCH CCG ¶ 30,872. See also F.R.B. Letter, by J. Kluckman, January 23, 1973, CCH CCG ¶ 30,935.

**19.** In January, 1974, the FRB staff published Opinion Letter 748 stating that a Louisiana confession of judgment clause should be disclosed under Regulation Z, § 226.202. However, on February 28, 1974, the staff published Opinion Letter No. 759 reversing its prior position, stating:

"Unfortunately, the original inquiry to which letter 748 was addressed *did not elaborate* in sufficient detail on the nature of a confession of judgment clause under Louisiana law so as to distinguish such clause from its customary characterization and usage in common law

that a Louisiana confession of judgment clause, unlike a common law confession of judgment, gave the creditor no greater rights in the debtor's property than the "mortgage, lien and privilege" which was adequately disclosed, and therefore was not required to be disclosed as a "security interest." *See Meyers, supra,* 727–28. We adopt that portion of the district court's opinion which so thoroughly and skilfully treats this issue.

## VI. *Cross-appeal: Computation of Damages.*

■ The district court found Clearview and Chrysler Credit jointly and severally liable to the appellee for the sum of $1,000.00, the statutory maximum penalty, and a reasonable attorney's fee of $3,000.00. Appellee now asserts, however, that a recent amendment to the civil liability section of the Act, 15 U.S.C. § 1640, requires this court to assess the statutory penalty against each defendant in a case involving multiple creditors.[20] Section 1640(a) was amended to provide in pertinent part as follows:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this Act with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000;
>
> . . . [21]

Appellee finds support for her claim in the *"any creditor"* language of the Act. Similar language was used in the legislative history. However, the statutory reference to "any creditor" is not dispositive of whether Congress intended joint creditors to be separately liable under the Act.

Faced with a similar problem the Seventh Circuit Court of Appeals concluded in *Mirabal v. General Motors Acceptance Corporation,* 537 F.2d 871, 881 (7th Cir. 1976), that "it would seem harsh to impose separate penalties on both creditors for basically a single failure on their part." We must agree. Where, as here, one creditor has sold the other the consumer credit contract

States. The inquiries referenced above have provided staff with sufficient information to indicate that a Louisiana confession of judgment clause is commonly used as a procedural device in conjunction with a mortgage on real or personal property to permit a creditor to avail himself of executory process. In such cases, the clause creates no security interest beyond that taken, and presumably disclosed under the mortgage.

"Based upon these factors and our understanding that under Louisiana law a judgment executed before a default is void, we believe that a Louisiana confession of judgment need not be disclosed as a security interest under the provisions of § 226.8(b)(5) and § 226.202 of Regulation Z . . ." F.R.B. Letter No. 759, by J. Kluckman, February 28, 1974, CCH Consumer Credit Guide ¶ 31,082.

**20.** Section 408(e) of the October 28, 1974, amendments, Pub.L. 93–495, Title IV, § 408(e), 88 Stat. 1519, applies the new provisions to pending lawsuits which have not been finally decided. That section provides as follows:

The amendments made by sections 406, 407, and 408 shall apply in determining the liability of any person under chapter 2 or 4 of the Truth in Lending Act, unless prior to the date of enactment of this Act such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise.

**21.** Truth in Lending Act, § 130(a), 15 U.S.C. § 1640(a) (1976). At the time of entry of judgment in the case below section 130(a) provided:

Except as otherwise provided in this section, any creditor who fails in connection with any consumer transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

at issue, there has been but one "credit sale" giving rise to truth in lending violations. The appellants herein acted jointly in extending the credit and they were responsible for making a joint disclosure of the information required by the Act and Regulation Z.[22] Imposing separate liability on the joint creditors in this single consumer credit transaction does little to further the general purposes of the Act and is not mandated by practical considerations or the statutory language.[23] *See Starks v. Orleans Motors, Inc., supra,* at p. 933. We find appellee's plea for an extension of liability unconvincing and affirm the district court's award of statutory damages.

The judgment of the court below is affirmed in part, reversed in part, and is remanded for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

---

**22.** *See* Regulation Z, §§ 226.6(d), 226.8(a) & (c), 12 C.F.R. §§ 226.6(d), 226.8(a) & (c) (1976).

**23.** Strong evidence of a Congressional intent to limit a person's recovery to a single award of the statutory penalty is found in recently added subsection (g) of section 130, 15 U.S.C. § 1640(g). That subsection limits the creditor's liability for multiple failures to disclose, and states that

The *multiple failure* to disclose to any person any information required under this part to be disclosed in connection with a single account under an open end consumer credit plan, other *single consumer credit sale,* consumer loan, or other extension of consumer credit, shall entitle the person to a single recovery under this section, but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. [Emphasis added].