**Jessica KITTRELL, Plaintiff,**

v.

**RRR, L.L.C., et al. Defendants**

No. CIV.A.03–292–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 9, 2003.

Alexander Hugo Blankingship, III, Blankingship & Associates P.C., Alexandria, VA, for Plaintiffs/Movants.

Michael J. Holleran, Walton & Adams P.C., Reston, George Richard Pitts, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for Defendants/Respondents.

## *MEMORANDUM OPINION*

ELLIS, District Judge.

At issue on cross motions for summary judgment in this Consumer Leasing Act (CLA)[1] case are the following two issues:

(1) Can a consumer recover actual damages from a lessor under the CLA for errors appearing on the face of a lease where, as here, the consumer made no payments under the lease because it became void and was superseded by a second lease?

(2) Can a consumer recover twice her actual and statutory CLA damages by obtaining separate judgments for these damages against both the lessor and the assignee of the lease or is the consumer limited to a joint and several judgment against the lessor and the assignee for the total actual and statutory damages?

---

1.  15 U.S.C. § 1667.

## I.[2]

Plaintiff Kittrell is a resident of the Commonwealth of Virginia. Defendant RRR, L.L.C. (Rosenthal) is a Virginia corporation engaged in the business of leasing and selling motor vehicles through several dealerships in Virginia. Defendant Ford Motor Credit Company (Ford Credit) is a New York corporation engaged in the business of purchasing and holding automobile leases.

On June 1, 2002, plaintiff visited the Rosenthal dealership in Vienna, Virginia intending to purchase a new automobile. She chose a 2002 Mazda Miata. A Rosenthal sales representative advised the plaintiff that she would benefit financially by leasing, rather than purchasing, the Miata. To induce the plaintiff to lease the Miata, Rosenthal offered to waive the vehicle's security deposit provided the plaintiff would agree to lease the vehicle and pay the first month's lease payment upon inception of the lease. Plaintiff accepted this inducement, entered into a Motor Vehicle Lease Agreement (Lease A), and paid Rosenthal the first month's lease payment. Lease A was signed by the plaintiff and the head of Rosenthal's finance department on June 1, 2002.

Lease A, on its face, contained the following inaccuracies: (1) a $1,715.42 overstatement of the gross capitalized cost of the vehicle,[3] (2) a $112 error in the license and registration fees, and (3) a $1,200 error in the total taxes due through the term of the lease. These facial errors total $3,027.42, which, the parties stipulate, would be the total amount of actual dam-

ages plaintiff may recover from Rosenthal in the event of a ruling allowing the recovery of actual damages under Lease A.

Three weeks later, but before the plaintiff had made any additional payments on the lease, Rosenthal's finance representative telephoned the plaintiff to inform her that Rosenthal would no longer honor the terms of Lease A unless the plaintiff paid a security deposit on the vehicle. The finance representative requested that the plaintiff sign a new Motor Vehicle Lease Agreement that would include a security deposit, but would contain identical monthly lease payments. Plaintiff objected to Rosenthal's request for the security deposit because it specifically violated the parties' original agreement and she accordingly refused to sign a second lease. In response, the head of Rosenthal's finance department assured plaintiff that the additional security deposit would be rolled into the new monthly lease payments and would result in an increase in plaintiff's payments of only three or four dollars per month. Based on this representation, plaintiff returned to the dealership on June 25, 2002 and signed a second Motor Vehicle Lease Agreement (Lease B). Consistent with the lease's terms and the dealership's usual practice, Rosenthal then assigned the new lease agreement to Ford Credit.

Lease B, like its predecessor, contains facial inaccuracies. Specifically, those inaccuracies are: (1) a $1,715.42 overstatement of the gross capitalized cost of the vehicle,[4] (2) a $112 error in the license and

---

**2.** The undisputed facts recited here are derived from the parties' joint stipulations of fact and the pleadings.

**3.** This figure differs from the figure for the same item contained in the parties' pleadings. (Compl. ¶ 11; Answer ¶ 11). In this proceed-

ing, the figure contained in the joint stipulations of fact controls. (Stipulations ¶ 7).

**4.** As with the joint stipulations with respect to Lease A, this figure differs from the figure for the same item contained in the parties' briefs. (Compl. ¶ 40; Answer ¶ 40). The figure con-

registration fees, (3) a $1,200 error in the total taxes due, and (4) a $600 increase in the vehicle's value from Lease A to Lease B. In light of these errors, the parties have stipulated that the total actual CLA damages plaintiff may recover for Lease B is $3,627.42.

It is uncontested that Lease B has superseded Lease A and that plaintiff has elected to retain the Miata and seek CLA damages under both leases. Rosenthal never assigned Lease A to Ford Credit and confirmed in the course of oral argument that it considers Lease A void and will mark the lease as such and return it to plaintiff.

Although the parties agree and stipulate to the uncontested facts recited here, they disagree as to the liability consequences under both Lease A and Lease B. As to Lease A, plaintiff contends she should recover against Rosenthal both actual ($3,027.42) and statutory ($1,000) damages for a total of $4,027.42. Rosenthal agrees that it is liable to plaintiff for statutory damages ($1,000) for CLA violations on the face of Lease A, but it contends that plaintiff cannot recover any actual damages under Lease A because plaintiff suffered no actual damages attributable to that lease.

As to Lease B, the parties agree that statutory ($1,000) and actual ($3,627.42) damages total $4,627.42, but they disagree as to whether both defendants are separately liable for the whole amount. Plain-

tiff argues that she should recover $4,627.42 from both defendants for a total recovery of $9,254.84, whereas defendants argue that plaintiff may recover jointly and severally against all defendants for a total recovery of $4,627.42.

Each of these contested damages issues is separately addressed.

## II.

■ No controlling circuit authority nor any statutory provision directly addresses whether plaintiff may recover actual damages for Rosenthal's violation of the CLA under Lease A given that she suffered no actual injury or loss attributable to Lease A.[5]

Although the CLA does not explicitly address this issue, neither is it entirely silent on the matter. Thus, the remedies provision for CLA violations, found in the Truth in Lending Act (TILA), 15 U.S.C. § 1640, states in terms pertinent to the issue at bar that a lessee may recover from a lessor who has violated the CLA "any actual damage *sustained* by such person as a result of the failure." 15 U.S.C. § 1640(a)(1) (emphasis added). This plain language makes clear that a lessee must have suffered an injury or loss to recover actual damages. Consistent with this construction of § 1640(a)(1), a companion section, § 1640(a)(2)(A)(i), allows the recovery of statutory damages whether or not actual damages are "sustained."[6] This addi-

tained in the joint stipulations of facts controls in this proceeding. (Stipulations ¶ 8).

**5.** The parties stipulate that plaintiff may recover $1,000 in statutory damages under Lease A. (Stipulations ¶ 7). *See also supra* note 6.

**6.** Courts interpreting § 1640(a)(2)(A) specifically state that a plaintiff may recover statutory damages without proof of injury or harm. *See, e.g., Purtle v. Eldridge Auto Sales, Inc.,* 91

F.3d 797, 800 (6th Cir.1996) ("A plaintiff in a TILA case need not prove that he or she suffered actual or monetary damages in order to recover the statutory damages and attorney's fees."); *Cowen v. Bank United of Texas,* 70 F.3d 937, 940 (7th Cir.1995); *Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir.1983) ("Although we agree with the district court that Mars sustained no actual injuries, § 1640(a)(2)(A)(i) permits statutory damages. . . ."); *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 780 (9th Cir.1982) ("Un-

tional remedy further reflects that Congress intended to limit the recovery of actual damages to those actually incurred.[7] Had Congress intended to allow a plaintiff to recover actual damages in the absence of any injury or loss, it would not likely have provided for the additional remedy of statutory damages to be awarded whether or not actual damages exist. In short, although the CLA does not squarely address whether plaintiff may recover actual damages under Lease A, the pertinent statutory language points convincingly to the conclusion that actual damages must be actually incurred to be recovered under the CLA, and hence plaintiff may not recover any actual damages under Lease A.

■ This result finds firm support in both the legislative history and the statute's remedial purpose.[8] Thus, the relevant House Report notes that:

Section 130(a) of TILA [codified at 15 U.S.C. § 1640(a)] allows a consumer to recover both actual and statutory damages in connection with TILA violations.

Congress provided for statutory damages because actual damages in most cases would be nonexistent or extremely difficult to prove. To recover actual damages, consumers must show that they have suffered a loss because they relied on an inaccurate or incomplete disclosure.

H.R.Rep. No. 104–193 (1995); *see also Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001) (citing TILA's legislative history in support of the conclusion that a plaintiff must show actual injury to recover actual damages). Moreover, the punitive effect of allowing a recovery of actual damages where such damages are not actually incurred is inconsistent with the CLA's remedial purpose.[9]

Authority on this issue, although sparse, is uniformly supportive of the result reached here. Several courts have explicitly held that a plaintiff may not recover actual damages without proof of actual injury or loss.[10] Other courts indirectly

---

der TILA, statutory damages are available merely on proof of a violation; no proof of actual damages is required.").

7. *See Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir.2000) ("If the plain meaning alone does not clearly enough indicate that plaintiff must show detrimental reliance upon a lessor's disclosure violation, the requirement becomes manifest when § 1640(a) is placed in its statutory context and contrasted with the statutory liquidated damages provision.").

8. The traditional definition of actual damages as "an amount awarded to a complainant to compensate for a proven injury or loss," also firmly supports the result reached here. *Peters v. Lupient Oldsmobile Co.*, 220 F.3d 915, 916 (8th Cir.2000) (quoting Black's Law Dictionary 394 (7th ed.1999)); *see also Perrone*, 232 F.3d 433, 435–36 (5th Cir.2000) (relying on the traditional definition of actual damages to conclude that plaintiff may not recover actual damages not actually suffered); *Bar-*

*low v. Evans*, 992 F.Supp. 1299, 1309 (M.D.Ala.1997) (same).

9. *See* 15 U.S.C. § 1601(b) ("It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him...,"); *Redhouse v. Quality Ford Sales Inc.*, 511 F.2d 230, 237 (10th Cir. 1975) (finding that the purpose of TILA is remedial, not punitive).

10. *See Peters*, 220 F.3d at 916–17 ("This court will apply the traditional definition to the term actual damages as it is used in § 1640, and require that a plaintiff prove an injury or loss."); *Bizier v. Globe Fin. Servs. Inc.*, 654 F.2d 1, 4 (1st Cir.1981) ("In actions [under § 1640(a)(2)], such conventional contract-law elements as damages and causation must be shown...."); *Hodges v. Koons Buick Pontiac GMC, Inc.*, 180 F.Supp.2d 786, 792 n. 6 (E.D.Va.2001) ("To recover actual damages, the plaintiff must show a real loss or injury

reach the same result by holding that a plaintiff must prove "detrimental reliance" on a lessor's CLA violation to recover actual damages by establishing a causal link between the violation and the plaintiff's actual injury or loss.[11] No case to the contrary has been found or cited.

Nor are plaintiff's policy arguments that she should recover actual damages under Lease A meritorious. First, the plaintiff claims that she is entitled to recover actual damages because she incurred damages when she initially signed and became contractually obligated under Lease A. Yet, plaintiff's argument fails given that Lease A is now void and plaintiff is no longer contractually obligated by it. Second, plaintiff contends that she is entitled to actual damages because to hold otherwise would require that a lessee wait until the end of the lease term to file suit under the CLA. Yet, in this regard, plaintiff fails to acknowledge that the statute provides for statutory damages so that the plaintiff may file suit and recover damages as soon as the lease is signed.[12]

In sum, plaintiff's attempt to recover actual damages for Lease A when no such damages were suffered runs counter to the CLA's language and remedial purpose and to existing authority. Such damages must be "sustained" to be recoverable.

## III.

■ Whether the plaintiff may recover the full amount of her actual and statutory damages from both Rosenthal and Ford Credit or is instead limited to a joint and several recovery is also not squarely addressed in the statute or circuit precedent. Again, however, there are strong statutory clues that provide an answer to this question.

First, § 1640(d) provides that "there shall be no more than one recovery of damages..." when there are multiple lessees on a single lease. 15 U.S.C. § 1640(d). Second, § 1640(g) provides that multiple failures to disclose in violation of the CLA by a single lessor on a single lease only entitle a lessee to a single recovery. 15 U.S.C. § 1640(g). Though neither provision directly addresses the question at bar, both provisions make clear that, in at least two other contexts, Congress intended to limit a plaintiff to a single recovery. Hence, these provisions provide strong evidence that, in this context, Congress intended the same result and plaintiff's recovery must be limited to a single award. *See Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 521 n. 23 (5th Cir.1976) (relying on § 1640(g) to limit plaintiff's recovery from multiple defendants to a single award).

Again, this reading of the statutory language finds firm support in the statute's overriding remedial purpose and traditional damages principles. Imposing separate liability on both defendants would have a punitive effect inconsistent with the stated remedial purpose of the statute.[13] Likewise, limiting plaintiff's recovery to a single award is consistent with the principle that compensatory damages, such as actual damages available under § 1640(a)(1), are intended to make an injured party whole, not to allow her to turn a profit or gain a

---

proximately caused by the defendant's TILA violation.").

**11.** *See Turner v. Beneficial Corp.,* 242 F.3d at 1028 ("We hold that detrimental reliance is an element of a TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financ-

ing institution's noncompliance and his damages."); *Perrone,* 232 F.3d at 436 (requiring the plaintiff to prove a direct causal relationship between defendant's CLA violation and her injury or loss).

**12.** *See supra* note 6 and accompanying text.

**13.** *See supra* note 9.

multiple recovery. *See* 22 AM. JUR. 2D *Damages* § 27 (2003). In addition, the absurdity of a plaintiff's multiple recovery in a case involving multiple assignees further supports limiting plaintiff's recovery to a single award, even in a case involving two defendants.

Authority from several circuits supports the conclusion that a plaintiff is only entitled to a single award for TILA violations by a creditor and its assignee.[14] Two circuits, the D.C. and Fifth, reasoned that a creditor and assignee may not be held separately liable for violations on a single lease under § 1640(g), a provision prohibiting a plaintiff from obtaining more than a single recovery for multiple failures to disclose on a single instrument. *See Price v. Franklin Inv. Co., Inc.*, 574 F.2d 594, 606 (D.C.Cir.1978); *Meyers*, 539 F.2d at 521 n. 23. And, the Seventh Circuit in *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 880–81 (7th Cir.1976), similarly reasoned that the words "any creditor" in § 1640(a) indicated Congress' intent to impose joint and several liability on violating creditors or lessors. *See Mirabal*, 537 F.2d at 881. On this issue, too, no case to the contrary has been found or cited.

Plaintiff's policy arguments that she is entitled to more than one recovery are unpersuasive. First, plaintiff claims that she is entitled to recover more than once because each defendant committed a separate violation of the CLA. Yet, courts have rejected this argument, finding that under § 1640(g) a violation by a creditor or lessor and an assignee qualifies as a single violation subject to a single recovery. *See Price*, 574 F.2d at 606; *Meyers*, 539 F.2d at 520. Second, the plaintiff argues that full and separate liability should be imposed on Ford Credit to deter violations of the CLA by assignees. Yet, Congress provided for statutory damages to deter CLA violations.[15] Awarding plaintiff a multiple recovery would allow her to recover punitive damages, a result Congress never intended.[16] Finally, plaintiff contends she is entitled to more than one recovery because she has suffered actual damages twice. The short answer to this is that it is wrong; plaintiff suffered actual damages only once.

In sum, plaintiff's attempt to recover her damages twice is unsupportable; she is only entitled to recover these damages once by way of a judgment against both defendants, jointly and severally, for the full amount of her actual and statutory damages.

An appropriate order has issued.

---

**14.** *See Price v. Franklin Inv. Co., Inc.*, 574 F.2d 594, 606 (D.C.Cir.1978) ("[A]ppellant is entitled only to a single award from the two appellees."); *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 520–21 (5th Cir.1976) ("Imposing separate liability on the joint creditors in this single consumer credit transaction does little to further the general purposes of the Act and is not mandated by practical considerations or the statutory langauge."); *Hinkle v. Rock Springs National Bank*, 538 F.2d 295, 297 (10th Cir.1976) ("[T]he Act provides only for a single recovery, no provision is made for multiple recoveries....") *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 881 (7th Cir.1976) ("The creditors in this transaction, having acted jointly, are jointly liable under the Act."). In 15 U.S.C. § 1667d(c), Congress indicated that the term "creditor" as used in TILA includes a lessor.

**15.** *See* 15 U.S.C. § 1640(a)(2)(A)(i); *see also supra* note 6.

**16.** *See supra* note 9.