Janet CENANCE, Plaintiff,

v.

BOHN FORD, INC., and Ford Motor Credit Company, Defendants.

Civ. A. No. 76–2878.

United States District Court,
E. D. Louisiana.

April 14, 1977.

Joseph W. Thomas, New Orleans, for plaintiff.

Peter A. Feringa, Jr., Norris Williams, New Orleans, for defendant.

William J. Wegmann, New Orleans, for defendant.

ALVIN B. RUBIN, District Judge:

The plaintiff seeks damages for a claimed violation of the Truth in Lending Act as a result of failure properly to itemize the charges made and properly to identify the true lender on the required disclosure form. Although the amount of the charge that was not properly itemized is small, the statutory violation is evident. The true lender

was not identified in a way that would be clear to the borrower. Hence, judgment is rendered for the plaintiff.

I

On 26 April 1976, plaintiff entered into a contract with Bohn Ford ("Bohn") to purchase a used 1974 Ford automobile. She did not pay cash, but sought credit. To obtain this, she agreed to time payments pursuant to the terms of an automobile retail installment contract, and filled out a credit application to Ford Motor Credit Co. ("Ford") on a form printed by Ford. Bohn had a standing arrangement with Ford to handle credit sales in this way, and, in addition to receiving payment for the automobiles it sold, was paid a consideration by Ford out of the net proceeds of the transactions accepted by Ford. Bohn and Ford both contemplated throughout that, if the application was satisfactory, Ford would finance the car, and Bohn would not itself undertake the financing risk.

On the next business day, Bohn submitted plaintiff's application to Ford, and was advised that Ford would purchase the credit instrument represented by the Ford approved forms if Bohn and the plaintiff executed them. The plaintiff signed these documents, supplied by Ford, then the defendant's representative signed them and submitted them to Ford, which promptly remitted the agreed upon price to Bohn.

Bohn's business is selling automobiles. Ford's principal business is financing Ford dealers by making direct loans to them and by purchasing automobile retail installment contracts from them.

II

The plaintiff was required to pay a fee of $1.00, which was later actually paid to a public official for recording the chattel mortgage held as security for the credit sale. The disclosure form showed the following:

License, Title & Registration Fees $10.50.

The state's charge for the automobile license was $6.00, and the state's charge for

the automobile title and registration was $3.50. The sum of $1.00 was actually paid for recording the mortgage, but this was not separately itemized and Bohn says it was included in the $10.50.

■ Section 226.4 of the Truth in Lending Regulations permits creditors to omit from the finance charge "fees and charges prescribed by law" if they are otherwise itemized and disclosed to the borrower.[1] Including the official fee for recording a mortgage in the charge shown for "License, Title & Registration" does not satisfy the requirements of the regulations. The *finance charge* is what the credit consumer is told is the cost of his credit. In order for the creditor to exclude *official charges* from the *finance charge*, the official charges must be itemized. A charge may not be lumped together with a number of other, ostensibly official, charges. *Grant v. Imperial Motors*, 5 Cir. 1976, 539 F.2d 506. The consumer has a right to know the nature of and amount of each charge exacted by law rather than by the creditor.

■ It is possible to indulge in semantic pilpul about whether a charge for recording a mortgage is embraced within the phrase "license, title, and registration fees." But, however common parlance or dictionaries may treat the terms, Section 226.4 of the Regulations distinguishes the two types of charges for Truth in Lending purposes. 12 C.F.R. § 226.4. Section (b)(1) refers to: "Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction." Section (b)(4) refers to: "License, certificate of title, and registration fees imposed by law." These separate definitions serve to differentiate charges paid to perfect

mortgages from registration fees. Hence, the disclosure statement fails to itemize the charge for recordation and is deficient. The Fifth Circuit has recently held that the modesty of an omitted charge is no defense. *Grant v. Imperial Motors*, supra, 539 F.2d at 510. Even if it were a defense, we do not deal here with a minor error but with a practice dictated by a printed form that is obviously used repetitively. Hence, it cannot be treated as inadvertent or de minimis.

### III

■ Nor is there any itemization of the other charges included in the $10.50 exacted for "license, title and registration fees." It was not sufficient for the defendants to list the charges collectively; the borrower has a right to know not only the total sum of officially prescribed fees, but also the specific amount of each such fee. In *Grant v. Imperial Motors*, supra, the court held:

The requirements of this section are clear; unless the fees imposed by law in this transaction are itemized, they must be included in the computation of the finance charge.

539 F.2d at 510. In *Grant*, the defendant had disclosed charges for license tag and title registration by aggregating the two and calling them "official fees". While the disclosure statement revealed the nature of the official fees, the components of the fees were not listed separately, as the court held the Truth in Lending Act requires.

### IV

The Truth in Lending Act, through the regulations promulgated pursuant to it, requires that the creditor who makes a loan be clearly identified on the disclosure statement.[2] Ford was mentioned in only one

---

1. 12 C.F.R. 226.4(b).

2. . . . At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made *and on which the creditor is identified* . . . 12 C.F.R. 226.8(a).
   If there is more than one creditor in a transaction, each creditor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer. If two or more creditors make a joint disclosure, each creditor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he

way on the disclosure form; at the bottom of the form, there was the recital:

> The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the assignment set forth on the reverse side hereof.

This obviously refers to Ford only as a potential assignee, and the assignment was, of course, to be executed only at some time after the plaintiff signed the form.[3] The real question is whether Ford was a "creditor" as defined in the Regulations when the plaintiff executed the instrument so that it had to be identified.[4]

### V

The Act and Regulation Z define a creditor as one who, in the ordinary course of business, "regularly extends or arranges for the extension of consumer credit or offers to extend or arrange for the extension of such credit . . ." Reg. Z, 226.2(s), 12 C.F.R. § 226.2(s) (1976).

Ford was the ostensible assignee of the installment sales contract for the sale by Bohn to the plaintiff. But the form the transaction took, an apparent credit sale by Bohn, followed by an assignment to Ford, was planned by Ford for the putative advantages Ford would gain were it not a lender but an assignee. As indicated above, Bohn obtained credit information from the plaintiff on a form of customer statement prepared by Ford before entering into any agreement with the plaintiff. Based upon this data, Ford approved the plaintiff's credit standing and agreed to the transaction.

The terms of the proposed credit sale were incorporated in a blank form of contract prepared by and furnished to Bohn by Ford. Subsequent to the sale of the automobile, the contract was tendered to Ford.

It was "purchased" by Ford in the ordinary course of a continuing business relationship between Ford and Bohn, under which Ford purchased a substantial quantity of such credit paper.

The facts pointing to Ford as lender—because Bohn dealt entirely with Ford unless the purchaser was able to make his own arrangements—are even stronger than those in *Meyers v. Clearview Dodge*, 5 Cir. 1976, 539 F.2d 511.

> It is undisputed that Clearview is in the business of selling automobiles and does not ordinarily finance credit sales itself. Instead, when the purchaser has not made financing arrangements of his own, Clearview takes a financial statement and submits it to several institutional creditors with whom it regularly deals for approval of the purchaser's credit. If any one of the lenders approves the customer's credit, Clearview completes the sale and immediately assigns the commercial papers to an approving lender. This practice of prearranging the assignment of commercial paper is a regular and essential part of Clearview's business and is, as the district court concluded, tantamount to arranging for the extension of credit.

539 F.2d at 515. There the Fifth Circuit held that the financer who agreed to take a particular loan was, in fact, an extender of credit, even though it might also be characterized as an assignee:

> Chrysler Credit argues . . . that additional undisputed facts support a conclusion that it is merely a 'subsequent assignee' within the meaning of that term in section 1641 of the Act. Appellant insists that Clearview is the original creditor in this transaction, since at the moment the transaction was consummated Clearview was the holder of the note

---

extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8.

12 C.F.R. 226.6(d).

**3.** One district court has considered such a reference a sufficiently clear identification, *Virginia Jones Main v. Faller Ford, Inc.*, C.A. 74–337, W.D.Pa., April 22, 1976.

**4.** This determination is also significant in deciding the joint liability of Ford for the other violations of the Regulations. See this opinion, supra.

and chattel mortgage, and consequently the only one to whom appellee was obligated. However, appellant's argument elevates form over substance in an effort to avoid the realities of the credit transaction. Clearview never assumed any of the risks normally associated with the extension of credit in its dealings with appellee. By prearranging the assignment of the installment contract to Chrysler Credit, or any other institutional lender, Clearview merely arranged to sell the automobile for cash to be supplied by another. There is little doubt that in this transaction 'credit,' 'the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment,' was extended by Chrysler Credit and arranged for by Clearview.

539 F.2d at 515, 516.

■ Under *Meyers*, all who are assignees under state law are not treated alike when they handle transactions governed by the Truth in Lending Act. The issue is whether the assignee was so involved in the original decision to extend credit that it was not merely a firm who came on the scene after a lender had extended credit and purchased the loan, innocent of the original terms of the credit relationship and the disclosure statement, but, in fact, the intended creditor from the start.

■ The passage of a new provision limiting the liability of assignees in 1974, 15 U.S.C. § 1614, does not alter that rule.[5] The new section, quoted in the footnote,[6] was designed to immunize true assignees from liability for all violations except those apparent on the face of the instrument.

Indeed, the section employs the term *"subsequent* assignee" (emphasis supplied) to differentiate assignees who participate in the initial decision to extend credit from those who are not involved in the credit transaction until after assignment. To interpret Section 1614 as applicable to all who are nominal assignees, as Ford suggests, would permit the real lender to extend credit from behind the scenes, though the ostensible lender is merely its puppet so far as the credit decision goes. The real lender could then issue a joint disclosure statement with the arranger of credit, yet claim the limited liability permitted by Section 1614 because of the timing of the assignment of the contract. Although one of my brethren thinks otherwise, (*Williams v. Bill Watson Ford*, C.A. 74–3379, E.D.La.1976), I do not believe that this was the intent of the 1974 amendment.

Thus, while Ford may have been an assignee for state law purposes, it was a creditor as that term is defined in the Regulations, and violated Regs. 226.8(a) and 226.6(d) by failing clearly to identify itself on the disclosure statement.

## VI

■ Ford contends that the identification requirement is unenforceable because the Federal Reserve Board ("FRB") exceeded its statutory authority[7] in promulgating Regs. 226.8(a) and 226.6(d). The parameters of the Board's authority are broad, and a regulation will be upheld whenever it is "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publications Service*, 1973, 411 U.S. 356, 93

---

5. The *Meyers* case dealt with 15 U.S.C. § 1641 rather than 15 U.S.C. § 1614, but its reasoning is apposite here. See also 15 U.S.C. § 1640(d).

6. 15 U.S.C. § 1614 reads:
   Except as otherwise specifically provided in this title [15 U.S.C. §§ 1601, et seq.] any civil action for a violation of this title [15 U.S.C. §§ 1601, et seq.] which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the

instrument assigned unless the assignment is involuntary.

7. The Board shall prescribe regulations to carry out the purposes of this title [15 U.S.C. §§ 1601 et seq.]. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this title [15 U.S.C. §§ 1601 et seq.], to prevent circumvention or evasion thereof, or to facilitate compliance therewith. 15 U.S.C. § 1604.

S.Ct. 1652, 36 L.Ed.2d 318. The FRB was not unreasonable in concluding that knowledge of a creditor's identity promotes the "informed use of credit," the express goal of the Truth in Lending Act.

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit . . . It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

15 U.S.C. § 1601.

■ Congress deemed that the FRB was capable of formulating the details of the regulatory plan. Congress delegated to FRB the authority to use its reasonable discretion in promoting the informed use of credit. This broad delegation of authority is not confined to regulations that dictate only disclosure of the terms of the contract—in other words, the cash price, the finance charge, etc. While the discretion of the FRB is not unbounded, the creditor's identity is not a frivolous or extraneous bit of information, and may be important in the borrower's decision to commit himself to a particular credit arrangement. Informed persons sometimes do not choose to borrow from a lender known to be difficult to deal with and exacting in its demands.

■ Because Ford is not merely a "subsequent assignee", it is jointly liable with Bohn for any violations of the Act or Regulations contained in the disclosure statement. *Meyers v. Clearview Dodge Sales, Inc.*, supra.

Section 1614 limits the liability of a subsequent assignee to instances where "the violation is apparent on the face" of an assigned instrument. Ford cannot be both a creditor and a subsequent assignee. *Mey-*

*ers* supra, 539 F.2d 511, at 515. Since Ford was a creditor, its liability is not restricted to violations "apparent on the face of the [instrument assigned]."

## VII

■ While three violations of the Act and Reg. Z have been found in this case, the plaintiff may recover only once. Section 130(g) of the Act precludes multiple recoveries for multiple violations. 15 U.S.C. § 1640(g). Furthermore, a plaintiff may not recover against each defendant separately.

> The [defendants] herein acted jointly in extending the credit and they were responsible for making a joint disclosure of the information required by the Act and Regulation Z. Imposing separate liability on the joint creditors in this single consumer credit transaction does little to further the general purposes of the Act and is not mandated by practical considerations or the statutory language.

*Meyers*, supra, 539 F.2d at 521.

Accordingly, judgment will be entered for the plaintiff for $1,000.00, plus costs.[8] Plaintiff's counsel will be awarded reasonable attorneys fees, as permitted by the Act. 15 U.S.C. § 1640(a). If the parties to this lawsuit do not agree on the amount of attorneys fees, they may submit the matter to this court for further proceedings.

---

**8.** The Act provides recovery by the successful individual plaintiff in the amount of $100.00 or twice the finance charge, but, in no case, more than $1,000.00. 15 U.S.C. § 1640(a). The finance charge in this case was $934.61, so that the plaintiff may recover $1,000.00. That same section permits recovery of costs.