Foster F. DESSELLES, Jr.

v.

MOSSY MOTORS, INC., et al.

Civ. A. No. 76–3995.

United States District Court,
E. D. Louisiana.

Jan. 6, 1978.

Mark G. Murov, New Orleans, La., for plaintiff.

W. K. Christovich, Terry Christovich Gay, of Christovich & Kearney New Orleans, La., for defendants.

## OPINION

SEAR, District Judge:

The trial of this Truth in Lending case was held on September 23, 1977. After hearing all of the evidence as well as arguments of counsel the matter was taken under submission.

## I. FACTS.

On January 26, 1976 plaintiff Foster F. Desselles, Jr. went to defendant Mossy Motors, Inc.'s (Mossy) showroom for the purpose of purchasing a new automobile. A Mossy salesman took Desselles' order and asked Desselles whether he wished to arrange for credit. When Desselles responded affirmatively, the salesman told him that the loan would be made with General Motors Acceptance Corporation (GMAC). On January 28, 1976 plaintiff and defendant executed a document entitled "Sale and Chattel Mortgage" which also served as a disclosure statement of the terms of credit for purposes of the Truth in Lending Act.

Before Desselles signed the document, the salesman reviewed its terms in detail with Desselles to make sure that he thoroughly understood it, and reminded Desselles that GMAC was financing his credit. Contemporaneously with the signing the mortgage was assigned by Mossy to GMAC and the terms of the assignment were set forth on the reverse side of the "Sale and Chattel Mortgage".

On December 22, 1976 plaintiff brought suit against Mossy claiming that the disclosure statement did not meet the requirements of the Truth in Lending Act. The violations he alleges, as clarified in later pleadings, are two: first, plaintiff contends that Mossy failed to properly itemize fees paid for license and temporary tag, certificate of title, and recordation in violation of 15 U.S.C. §§ 1605(d)(1) and (4), 1638(a)(4) and 12 C.F.R. §§ 226.4(b)(1) and (4), 226.-8(c)(4); second, plaintiff contends that Mossy failed to identify GMAC as a creditor on the face of the disclosure statement in violation of 12 C.F.R. § 226.6(d). On January 14, 1977 Mossy answered the complaint and at the same time filed a third party complaint against GMAC on the ground that the disclosure statement furnished to Desselles had been prepared by GMAC and therefore responsibility for any violations contained in the statement should be borne by GMAC. On May 12, 1977 Desselles amended his complaint to add GMAC as a defendant. The third party complaint was dismissed on motion of GMAC on September 14, 1977 on authority of *McCain v. Clearview Dodge Sales, Inc.,* E.D.La.1977, C.A. 76–2846 an opinion by Judge Edward J. Boyle, Sr. of this court. Shortly before trial plaintiff settled his claim against GMAC for the sum of $400.00, and executed a "Receipt and Release" of his claim in favor of GMAC reserving his rights against the remaining defendant Mossy. The case proceeded to trial against defendant Mossy alone.

## II.  TRUTH IN LENDING VIOLATIONS.

■ 15 U.S.C. § 1602(f) defines creditor in part as follows:

The term "creditor" refers only to creditors *who regularly extend, or arrange for the extension of,* credit . . . .

*See also* 12 C.F.R. § 226.2(m). It is not contested that both Mossy and GMAC are creditors under this definition, Mossy as an arranger and GMAC as an extender of credit. 15 U.S.C. § 1631 requires that *each* original creditor make the disclosures required by the act, although 12 C.F.R. § 226.6(d) makes clear that this may be accomplished in the form of a joint disclosure statement. Provided that the disclosures are "within [the] knowledge and purview of [the] relationship with the customer" of each creditor, both original creditors are jointly and severally liable for failure to make the required disclosures. *Id.; Meyers v. Clearview Dodge Sales, Inc.,* 5 Cir. 1976, 539 F.2d 511.

A.  Failure to itemize.

The first alleged violation concerns items 4F and 4G on the disclosure form. These items are categorized as "Other Charges", *i. e.,* they are not included in the finance charge. 4F reads "License and/or Registration Fees (Itemize)" in print. Alongside of that on the same line the words "TEMPORARY TAG" have been typed, and at the end of the line the sum of $7.00 is listed. Similarly, "Certificate of Title Fee" is printed under 4G, and the words "RECORDING FEE" are typed beside it with a fee of $4.50 listed at the end of the line. As is evident from plaintiff's Application for Certificate of Title and Registration (Exhibit P–2) which was filled out by defendant Mossy, the $7.00 sum at line 4F consisted of $6.00 for a permanent license and $1.00 for a temporary tag. The $4.50 sum at line 4G consisted of $3.50 for the certificate of title itself and a $1.00 recordation charge. Temporary tags are purchased by Mossy in bulk in advance of sales.[1] Except for the $1.00 charge for the temporary tag, the remaining charges listed in 4F and 4G were paid by Mossy to the Department of Motor Vehicles, State of Louisiana in a single check (Exhibit D–4). Plaintiff contends that rather than lumping the license and temporary tag, and then the certificate

of title and recordation fee into single charges, each should have been separately itemized. In other words there should have been four separate listings rather than two cumulative ones.

■ The itemization provisions of the Truth in Lending Act and Regulation Z further the basic purpose of the Act which is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. By requiring that the charges listed in those provisions either be specifically itemized or else included in the finance charge, the provisions ensure that all costs of credit will be revealed to the consumer and minimize the possibility that such costs may be hidden in a group of seemingly legitimate non-credit charges that have been massed together under a single dollar figure.

Particularly in point here is 12 C.F.R. § 226.4(b)(1) and (4):

"*Itemized charges excludable.* If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:

(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

.    .    .    .    .

(4) License, certificate of title, and registration fees imposed by law."

In *Starks v. Orleans Motors, Inc.,* E.D.La. 1974, 372 F.Supp. 928, aff'd 5 Cir., 500 F.2d 1182, Judge Alvin Rubin held that listing a single figure of $15 to cover "license, license transfer, title, [and] registration fee" violated § 226.4(b)(4) among other provisions. The Fifth Circuit followed *Starks* in *Meyers v. Clearview Dodge Sales, Inc.,* 5 Cir. 1976, 539 F.2d 511 ($15 listing covered "Tag, Title & Fees"). *See also Grant v. Imperial Motors,* 5 Cir. 1976, 539 F.2d 506 ($16 listing covered "Official Fees"), and *Young v. Oua-*

*chita National Bank in Monroe,* W.D.La. 1977, 428 F.Supp. 1323 ($14.50 listing covered "Official Fees").

The case at hand is to some extent factually distinguishable. While the charges were not broken down to their smallest components, neither were they lumped together under a single figure. Indeed, witness Roy J. Mossy testified that defendant had previously listed such fees in globo but had changed its practice in recent years when it became clear through the line of jurisprudence cited above that to do so was a violation of Truth in Lending. Defendant has made a commendable effort to comply with the legal requirements.

■ Nonetheless I find that the form still violates § 226.4(b). Defendant argued at trial that to aggregate temporary and permanent license fees in a single dollar figure does not violate the Act because the two charges accomplish a single purpose— to secure a valid license for the consumer. In this regard, defendant's argument is persuasive and I find no violation. However the lumping of the certificate of title fee along with the charge for recordation is a different matter; because, while the same logic may apply, i. e., the two charges may be said to accomplish a single purpose, the provisions of § 226.4(b) specifically treat the two charges differently. Judge Rubin was recently faced with a similar argument in *Cenance v. Bohn Ford, Inc.,* E.D.La.1977, 430 F.Supp. 1064. In that case the disclosure form showed the following: "License, Title & Registration Fees $10.50". The testimony revealed that $6.00 was paid for a license, title and registration were $3.50, and the sum of $1.00 was paid for recording the mortgage. Judge Rubin perceived two separate issues from these facts. The first issue was whether the defendant violated the Act by including the official fee for recording a mortgage in the charge for "License, Title & Registration":

"It is possible to indulge in semantic pilpul about whether a charge for recording a mortgage is embraced within the phrase 'license, title, and registration fees.' But, however common parlance or

dictionaries may treat the terms, Section 226.4 of the Regulations distinguishes the two types of charges for Truth in Lending purposes. [The court then referred to subsections b(1) and b(4), noting that b(1) deals with charges for perfecting security interests while b(4) deals with license, title, and registration fees.] These separate definitions serve to differentiate charges paid to perfect mortgages from registration fees. Hence, the disclosure statement fails to itemize the charge for recordation and is deficient."

*Id.* at 1067. He then went on to consider the second issue, whether aggregating rather than itemizing license, title, and registration fees was a violation. Following prior jurisprudence he concluded that it was.

Therefore, under *Cenance* a recordation charge and a charge for certificate of title are distinct fees that must be clearly and separately itemized. To lump the fees together violates § 226.4(b). To impose liability on defendant for such a seemingly minor violation involving a $1.00 charge offends principles of fairness and equity. Nonetheless, I am bound to do so under prevailing precedent. In *Grant v. Imperial Motors,* 5 Cir. 1976, 539 F.2d 506, 509–10, the Fifth Circuit reversed a trial court which had failed to apply the Act literally:

"While the district court found that the defendant had failed to 'itemize' the official fees as required by the Act and Regulation Z, it nevertheless refused to impose liability for what it referred to as a violation 'miniscule in its scope and amount.' However, once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability. The civil liability section of the Truth in Lending Act provides that:

Except as otherwise provided in this section, any creditor who fails to comply with *any requirement imposed under this part* or part D of this subchapter with respect to any person is liable to such person . . . ."

Therefore, unless one of the defenses provided in the Act is applicable to this transaction, the Court must award the successful litigant-consumer the statutory penalty set out above."

I have no choice but to find defendant liable for the violation.

**B. Identifying creditors.**

■ The second violation alleged is that the disclosure statement failed to reveal the identity of the credit extender GMAC. The identification requirement is contained in 12 C.F.R. § 226.6(d):

"*Multiple creditors or lessors; joint disclosure.* If there is more than one creditor or lessor in a transaction, *each creditor or lessor shall be clearly identified* and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, *each creditor or lessor shall be clearly identified. . . .*" [Emphasis added.]

Defendant admits that GMAC is not identified as a creditor anywhere on the face of the disclosure statement. However, defendant contends that plaintiff was told orally well in advance of the sale that the loan would be made by GMAC (a contention borne out by the testimony), and further argues that identification of GMAC on the *reverse* side of the disclosure statement in the assignment of the mortgage is in any case sufficient.

Since it is not seriously disputed that both Mossy and GMAC were creditors in this transaction, provided that failure to identify GMAC on the face of the disclosure statement is a violation, defendant Mossy would be liable for the violation since:

"*Each* creditor shall disclose clearly and conspicuously . . . to each person to whom consumer credit is extended . . . the information required under this part." [Emphasis added.]

15 U.S.C. § 1631(a). *See also Meyers v. Clearview Dodge Sales, Inc.,* 5 Cir. 1976, 539 F.2d 511. The exception to joint liability contained in 12 C.F.R. § 226.6(d) quoted above would not apply since the informa-

tion was admittedly within Mossy's knowledge at the time of the disclosure, and was moreover certainly within the "purview of [Mossy's] relationship" with the plaintiff since Mossy's primary function in the transaction was to arrange credit with GMAC. *Cf. Williams v. Bill Watson Ford,* E.D.La. 1976, 423 F.Supp. 345.

Identification of GMAC as an assignee of the chattel mortgage on the reverse side of the disclosure statement does not comply with § 226.8(a) which reads in part:

"At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures *shall be made together* on either:

(1) The note or other instrument evidencing the obligation *on the same side of the page and above the place for the customer's signature*; or

(2) *One side of a separate statement* which identifies the transaction." [Emphasis added.]

Thus, without regard to the issue of whether identification of GMAC as an assignee would fulfill the substantive requirement of disclosing all creditors, the mere placement of the identification on the reverse side of the disclosure statement is a violation. *See Pedro v. Pacific Plan of California,* N.D.Cal. 1975, 393 F.Supp. 315; *Lauletta v. Valley Buick, Inc.,* W.D.Pa.1976, 421 F.Supp. 1036; and *Cenance v. Bohn Ford, Inc.,* E.D.La. 1977, 430 F.Supp. 1064 for like holdings on similar facts.

Defendant's argument that plaintiff was clearly aware of the identity of GMAC despite omission of GMAC from the disclosure statement is one of equity which seemingly has no place in Truth in Lending. As Judge Rubin remarked in *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928, 931:

"It makes no difference that this error was unintentional and made without wilful purpose to mislead. Although these factors might have some weight were we faced with possible criminal penalties under the Act . . ., the reference to 'unintentional error' in section 1640(c) has been held to apply only to clerical error." [Citations omitted.]

And, faced with the identical situation in *Lauletta v. Valley Buick, Inc.,* W.D.Pa.1976, 421 F.Supp. 1036, 1040 the court there said:

"Despite defendant's allegation that plaintiff—through discussions with defendant's salesperson and the appearance of GMAC's name on a separate order form—had actual knowledge of GMAC's role in the credit transaction, it is apparent that defendant's failure to identify GMAC as a creditor on the instrument operating as the disclosure statement amounted to a violation of Section 226.8 of Regulation Z.

The violation we have noted is admittedly technical and, if free to do so, the Court would be inclined as a matter of equity to view plaintiff's actual knowledge of GMAC's role in this matter as sufficient to shield defendant from liability. However, many of the requirements of the Truth-in-Lending Act are technical in nature, and the Court is not at liberty to deviate from them as it sees fit. Regulation Z unequivocally requires that necessary disclosures shall be written and made together on one document. The drafters of the legislation obviously felt that oral statements by creditors or piecemeal disclosures are not adequate to ensure the consumer's protection. Regardless of the wisdom or validity of that proposition, it is not this Court's prerogative to substitute its own view for that of Congress."

I can only conclude that by failing to make written identification of GMAC as a creditor on the face of the disclosure statement Mossy violated the Truth in Lending Act.

### III. IMPACT OF SETTLEMENT WITH GMAC.

Were GMAC still a defendant in this case along with Mossy, the question of damages would be clear. Mossy and GMAC would be jointly liable for a single statutory penalty of $1000. *Meyers v. Clearview Dodge Sales, Inc.,* 5 Cir. 1976, 539 F.2d 511. The

release of GMAC by plaintiff prior to trial for the sum of $400 while reserving rights against Mossy poses a problem which has apparently not been addressed in the published jurisprudence.

■ Plaintiff's contention that the settlement with GMAC should be entirely disregarded and that the full statutory penalty should be assessed against the remaining defendant Mossy is easily disposed of. To do so would run afoul of the Fifth Circuit's construction of the Act in *Meyers v. Clearview Dodge Sales, Inc., supra.* In that case the plaintiff argued that both the arranger and the extender of credit should be liable for violations of the Act contained in a single disclosure statement in the amount of $1000 each, giving plaintiff a total recovery of $2000. The court responded:

> "The appellants herein acted jointly in extending the credit and they were responsible for making a joint disclosure of the information required by the Act and Regulation Z. Imposing separate liability on the joint creditors in this single consumer credit transaction *does little to further the general purposes of the Act and is not mandated by practical considerations or the statutory language.*" [Emphasis added.]

*Id.* at 521. To permit plaintiff a full recovery in this case from Mossy would allow plaintiff to do by way of settlement what he could not do by way of judgment—to procure a recovery greater than the prescribed statutory penalty of $1000.

■ On the other hand defendant's argument that having accepted payment from GMAC plaintiff is barred from any recovery *whatsoever* against Mossy is equally untenable, for such a result contravenes the well established principle that settlement and compromise are favored in the law, and in fact would penalize a settling plaintiff. *See e. g., Lewis v. S. S. Baune,* 5 Cir. 1976, 534 F.2d 1115.

Had this case proceeded to trial with both defendants, judgment would have been entered against Mossy and GMAC jointly and solidarily, and execution of the judgment would have been made according to state practice and procedure. Rule 69, Fed.R. Civ.P. Therefore, I deem it appropriate to turn to the provisions of the Louisiana Civil Code which govern the rights of codebtors in this state:

> "When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation."

La.Civil Code art. 2103.

> "The remission or conventional' discharge in favor of one of the codebtors *in solido,* discharges all the others, unless the creditor has expressly reserved his right against the latter.
>
> In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission."

La.Civil Code art. 2203.

■ Louisiana law is that when a creditor (plaintiff) settles with and grants a remission as to one of two solidary obligors (defendants) the creditor thereafter can claim only one-half the debt from the obligor who has not been released whether the obligation be one arising in contract or tort. *Danks v. Maher,* La.App. 4 Cir. 1965, 177 So.2d 412, 423. Accordingly, I believe that the only correct and fair conclusion in the present situation is to cast the remaining defendant Mossy in judgment for one-half of the statutory penalty in the sum of $500.