Aretha JENNINGS, Plaintiff,

v.

Newett Drew EDWARDS, alias J. W. Cartwright, doing business as "Quality Distributors," and Forsyth Bank and Trust Company, Defendants.

No. C–76–638–WS.

United States District Court, M. D. North Carolina, Winston-Salem Division.

July 18, 1978.

David B. Hough, Winston-Salem, N. C., for plaintiff.

J. Robert Elster and W. R. Loftis, Jr. of Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., for defendants.

## MEMORANDUM OPINION

HIRAM H. WARD, District Judge.

This matter came on for hearing before the Court on May 26, 1978, upon motions by plaintiff and defendant Forsyth Bank for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The plaintiff asserts that she is entitled to a judgment as a matter of law, and defendant Bank, in addition to opposing her motion, moves for summary judgment in its own favor.[1]

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *United States v. Ball*, 326 F.2d 898, 902 (4th Cir. 1964). Even if certain facts are in dispute, summary judgment is appropriate if, considering the disputed facts in the light most favorable to the party opposing summary judgment, the moving party is entitled to judgment as a matter of law. *Wilson v. Continental Group, Inc.*, 451 F.Supp. 1 (M.D.N.C., 1978).

The plaintiff, Aretha Jennings, agreed to purchase on credit some bedroom and living room furniture from Showcase Unlimited. On September 21, 1976, two men came to her place of work to "fill out the papers."[2]

---

1. Although served with process, the other defendant, Newett Drew Edwards, alias J. W. Cartwright, d/b/a Quality Distributors, has not filed an answer or any other pleading in this case. Only the Bank is contesting its liability in the matter now before the Court.

2. The plaintiff explained that one of the men, "Steve," worked for Showcase Unlimited and that Steve introduced the other man as "Bob, . . . the loan financier for Forsyth Bank." However, for purposes of these motions for summary judgment, it is stipulated by the par-

She was presented a document entitled "Consumer Credit Agreement." In her deposition, the plaintiff stated that numerous blanks were not filled in when she signed the document: the names and addresses of the purchaser and seller were absent, as were the subtotal of the "unpaid balance," the credit life insurance charge, the date, the "unpaid balance," the finance charge, the total of payments, the deferred payment price, and the annual percentage rate. The Consumer Credit Agreement (hereinafter Agreement) stated that there was a cash down payment and a trade-in allowance, but plaintiff claimed that she made no such down payment or trade-in. The credit insurance provision was not explained to her; she was merely told to sign at a place which indicated she desired the insurance. She asked for a copy of the Agreement but was told that more paperwork needed to be done, and that she would receive a copy when her furniture was delivered.

The Agreement was not signed by the seller at the time the plaintiff signed. She thought she was dealing with Showcase Unlimited. However, the Agreement, when transferred to the defendant Bank, was signed by J. W. Cartwright for Quality Distributors, with Quality Distributors being designated the seller. Plaintiff had never heard of Quality Distributors or of Mr. Cartwright at the time she signed the Agreement.[3] On September 23, 1976, the Agreement was transferred to defendant Forsyth Bank.[4]

### Bank as Creditor

█ The first issue this Court must decide is whether the Bank was a creditor under the Truth-in-Lending Act (hereinafter Act), 15 U.S.C. §§ 1601, *et seq.* The Act provides:

The term "creditor" refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

15 U.S.C. § 1602(f).

The Regulations state that "creditor" means "a person who in the ordinary course of business regularly *extends or arranges for the extension of consumer credit,* or offers to extend or arrange for the extension of such credit . . . .." Regulation Z, 12 C.F.R. § 226.2(s) (1977) (emphasis added).

Courts, in applying this definition, have labeled parties in some transactions as arrangers of credit and as extenders of credit. In a typical situation, the arranger is a seller of merchandise or services who arranges for credit to be extended to its customer, and the extender is a bank or finance company which actually extends the credit to the customer. *See Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 515 (5th Cir. 1976); *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 91 (8th Cir. 1976); *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036, 1038–39 (W.D.Pa.1976). In these situations, the seller often assigns the contract it has with its customer to a bank or finance company. An assignment occurred in the present case, and defendant Forsyth Bank argues that it is a mere subsequent assignee.[5] Courts have looked to the relationship between the seller and the bank or finance company which is assigned the contract to determine whether such bank or finance company is a creditor or a subsequent assignee. *See, e. g., Price v.*

ties that no legitimate representative of Forsyth Bank was present. See note 10 *infra.*

**3.** Mr. J. W. Cartwright's real name is apparently Newett Drew Edwards. The Bank, in its dealings with Cartwright, knew him only as James W. Cartwright, owner of Quality Distributors. It was not until October 1976 that the Bank learned that Cartwright was an alias.

**4.** Plaintiff experienced some difficulty in obtaining her furniture, but she finally did receive it with the help of Mr. Baird Sills, a Vice President of Forsyth Bank.

**5.** If the bank were a subsequent assignee and not a creditor, the provisions of 15 U.S.C. § 1641 would be applicable.

*Franklin Investment Co.,* 574 F.2d 594 (D.C. Cir. 1978); *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511 (5th Cir. 1976); *Hinkle v. Rock Springs National Bank,* 538 F.2d 295 (10th Cir. 1976); *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86 (8th Cir. 1976); *Poirrier v. Charlie's Chevrolet, Inc.,* 442 F.Supp. 894 (E.D.Mo.1978); *Cenance v. Bohn Ford, Inc.,* 430 F.Supp. 1064 (E.D.La.1977); *Williams v. Bill Watson Ford, Inc.,* 423 F.Supp. 345 (E.D.La.1976); *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036 (W.D.Pa.1976); *Kriger v. European Health Spa, Inc.,* 363 F.Supp. 334 (E.D.Wis. 1973); *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill.1972).

Considering all of the circumstances in the instant case, this Court concludes that defendant Forsyth Bank was an extender of credit and Quality Distributors was an arranger of credit in the transaction involving the plaintiff. In May, 1976, the Bank (by Baird Sills) and Edwards (as J. W. Cartwright for Quality Distributors) entered into an agreement entitled "Dealer Reserve Agreement—Appliances and Equipment." The agreement indicated that Quality "desire[d] to offer to transfer and assign to you [the Bank] from time to time . . . conditional sale contracts, notes, . . . and other contracts . . . acquired by us from retail purchasers . . of appliances, equipment, and other personal property." The agreement listed the rights and duties of the parties in the transfer of contracts. For example, the agreement stated that the Bank had "no obligation to accept any of the contracts except those which [were] acceptable to [it] . . . in all respects." The amount to be paid to Quality for transferring the contracts would be "such sums as we may agree upon from time to time." Furthermore, the "finance charges contained in the contracts [would] be computed in accordance with charts provided by . . . [the Bank]." The agreement made clear that the Bank had full recourse against Quality Distributors.

Pursuant to the May, 1976, agreement, Quality assigned sixty-one contracts to the Bank within a four-and-one-half month period. The Bank furnished to Quality Distributors form contracts of the "Consumer Credit Agreement," and its logo, Forsyth Bank and Trust Company, was at the top left corner of the Agreement. The plaintiff signed such a form in the present case. The Agreement itself stated on the front that "Seller hereby transfers this Agreement to Forsyth Bank and Trust Company," and on the reverse side a more detailed recitation of the assignment appeared. The Court concludes that defendant Forsyth Bank had such a continuing, business relationship in extending credit to customers of Quality Distributors that it was a creditor within the meaning of the Truth-in-Lending Act.[6]

*Duty to Disclose in Multiple-Creditor Credit-Sale Transactions*

Having found defendant Bank to be a creditor, the Court must decide whether the Bank had a duty to disclose anything. The issue confronting the Court is: Where there are multiple creditors in a credit-sale transaction, and the creditors are the seller, as arranger of credit, and a bank, as extender of credit, what duty of disclosure and liability for nondisclosure do the seller and the bank have? The courts have differed in their answers to this issue.

Some courts, upon finding a bank or finance company to be an extender of credit (and hence a creditor) in a multiple-creditor transaction, have held such extender of credit to be fully liable for failing to make any disclosure required by the Act. That is, the mere fact of being found to be a creditor made the finance company liable for nondisclosures. Usually, the court would find the extender of credit jointly liable with the seller, as arranger of credit, for all nondisclosures. *See, e. g., Meyers v. Clear-*

**6.** The Bank argues that a major distinction between the present case and the cases finding a bank or finance company to be an extender of credit is that the Bank here had full recourse against Quality. The Court does not believe that this is a sufficient distinction to preclude finding the Bank to be a creditor under the Act.

*view Dodge Sales, Inc.,* 539 F.2d 511, 515 (5th Cir. 1976); *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86 (8th Cir. 1976); *Cenance v. Bohn Ford, Inc.,* 430 F.Supp. 1064, 1070 (E.D.La.1977); *Philbeck v. Timmers Chevrolet, Inc.,* 361 F.Supp. 1255 (N.D.Ga. 1973), *rev'd on other grounds,* 499 F.2d 971 (5th Cir. 1974).

Other courts have not been so quick to impose liability merely because a party is labeled a creditor. These courts have looked to section 226.6(d) of Regulation Z, 12 C.F.R. § 226.6(d), to determine the duty of disclosure in situations where there are multiple creditors. However, there is a split of authority as to the proper application and interpretation of § 226.6(d).

Section 226.6(d) of Regulation Z provides:

If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15.

In *Manning v. Princeton Consumer Discount Co.,* 533 F.2d 102 (3d Cir. 1976), the Court of Appeals for the Third Circuit held that, pursuant to § 226.6(d), a bank, as extender of credit, does not have any duty to disclose if the transaction involves a seller who is the arranger of credit. The court noted that "[t]he regulation requires that if the seller extends or arranges credit . . . then it must make the disclosures required under (b) and (c) of Regulation § 226.8." [7] *Manning,* 533 F.2d at 105. The court then stated:

The concluding sentence of 12 C.F.R. § 226.6(d) reads: "Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8." The language is far from clear, but we interpret the last sentence to mean that "otherwise" applies when the seller does not extend or arrange for credit. In that instance the lender or other creditor must make the disclosures of Regulation paragraphs (b) and (d) pertaining to credit loans . . . . .

In short, we hold that *if the transaction is one in which the seller arranges credit, the obligation of disclosure is placed upon him by the third sentence of Regulation § 226.6(d).* In that factual situation the specific direction of the third sentence prevails over the general language limiting the scope of disclosure to items within the creditor's knowledge and the purview of his relationship with the customer. *Manning,* 533 F.2d at 105 (emphasis added).

The Court of Appeals for the Tenth Circuit read § 226.6(d) differently. In *Hinkle v. Rock Springs National Bank,* 538 F.2d 295, 297 (10th Cir. 1976), the court asserted that "Regulation Z [12 C.F.R. § 226.6(d)] contemplates that when there are several 'creditors' they each shall be responsible for disclosures which are within the scope of its relationship with the consumer . . . and of data they possess." Applying this Regulation, the court held both the seller, which was the arranger of credit, and the bank, which was the extender of credit, liable for certain nondisclosures. The court ignored the last two sentences of § 226.6(d).

Recently, the Court of Appeals for the District of Columbia Circuit was faced with the issue of liability among multiple creditors. In *Price v. Franklin Investment Co.,* 574 F.2d 594, 601–02 (D.C. Cir. 1978), the court rejected the *Manning* approach and agreed with *Hinkle,* stating that:

[w]e are loathe in the absence of clearly compelling language to adopt a reading

---

**7.** § 226.8(c) applies to credit sales; § 226.8(d) applies to credit loans. Both (c) and (d) incorporate (b) by reference.

that would permit a finance company to escape all liability for nondisclosures by enlisting a seller of goods to arrange for an extension of credit. . . . To the extent that the finance company influences the conduct of the seller, the deterrent purpose of the liability provisions of the Act is advanced by interpreting the first sentence of section 226.6(d) to control liability for failure to make required disclosures. The limitation of "responsib[ility]" in the first sentence to disclosure of matters "within [the creditors'] knowledge and the purview of his relationship with the customer" confines multiple creditors' potential liability to nondisclosures for which they are justifiably held responsible, and is the interpretation most consistent with sections 121(a) and 130(a) and the general purposes of the Act.

This Court neither totally rejects nor accepts the *Manning* and *Hinkle/Price* decisions. The first sentence and the last two sentences of § 226.6(d) are not necessarily mutually exclusive, and the section can be read to give effect to all sentences. The approach this Court will take is a modification and combination of the *Manning* and *Price* cases.

■ The third sentence of § 226.6(d) cannot be ignored, it being very specific: "The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit." Paragraph (c) of § 226.8 (which incorporates (b) by reference) is applicable in the case of a *credit sale,* and "credit sale" is defined in 15 U.S.C. § 1602(g) as "any sale with respect to which credit is extended or arranged by the seller." The intent of the Regulation is clear: whenever the seller extends or arranges for the extension of credit, he has the duty of making all disclosures required by Regulation Z, and he is liable for failing to make such disclosures.[8]

The potentiality of liability, however, does not end here. As noted by the court in *Price,* a finance company, knowing of the Truth-in-Lending nondisclosure violations, could escape all liability for such violations by enlisting a seller to arrange for an extension of credit. Such a result would be contrary to the purposes of the Act and highly inequitable. Such a result can be avoided by applying the first sentence of § 226.6(d) to a creditor who is not a seller in a multiple-creditor credit-sale transaction. If there is more than one creditor in a credit-sale transaction, each creditor who is not the seller "shall be responsible for making only those disclosures required by . . [Regulation Z] which are within his knowledge and the purview of his relationship with the customer." The test for the nonseller creditor is two-pronged. To find him liable for a failure to disclose, (1) the information withheld must have been within his knowledge, and (2) the information withheld must have been within the purview of his relationship with the customer.

By interpreting § 226.6(d) as providing for two different standards of the duty to disclose in a multiple-creditor credit-sale transaction, the Court attempts to harmonize the various commands of § 226.6(d), and it believes that such interpretation is most consistent with the purposes of the Truth-in-Lending Act.

■ In summary, whenever there are multiple creditors in a credit-sale transaction, the seller, who is the arranger of credit, has the duty of making all disclosures required under § 226.8(b) and (c) of Regulation Z, and the other creditor, as extender of credit, has the duty of making those disclosures required by Regulation Z which are within his knowledge and the purview of his relationship with the customer.[9]

In the present case, Edwards, the seller, was the arranger of credit, and defendant

8. The court in *Williams v. Bill Watson Ford, Inc.,* 423 F.Supp. 345, 356 (E.D.La.1976), in approving the *Hinkle* approach and rejecting *Manning,* interpreted the third sentence of § 226.6(d) to be "a mere mechanical directive . . . requir[ing] that when a joint disclo-

sure is made [by multiple creditors] . . . the seller is the one who must physically deliver the disclosure statement to the customer." This Court disagrees with such interpretation.

9. Placing such a duty upon a bank, as extender of credit, is neither harsh nor unreasonable.

Forsyth Bank was the extender of credit. Therefore, the Bank had the duty to disclose that which was within its knowledge and the purview of its relationship with plaintiff. If a representative of the Bank was actually present at the signing of the Consumer Credit Agreement by plaintiff, and hence he was aware of the alleged nondisclosures, then the Bank would be liable for such nondisclosures. However, counsel for plaintiff has stipulated that, for purposes of the summary judgment motions, no representative of Forsyth Bank was present at the signing. Defendant Bank asserted that the first time any representative or employee of the Bank saw the Consumer Credit Agreement was on September 23, 1976, two days after plaintiff signed it, and that on said date "each and every disclosure was fully completed and no violation of the Truth-in-Lending Act appeared on the face of the instrument." Affidavit of Forsyth Bank and Trust Company, by Vice President Baird Sills, Aug. 23, 1977 (hereinafter Affidavit of Forsyth Bank). The plaintiff argues that defendant Bank is liable for violations of the Act because it failed to disclose two matters which were within its knowledge and the purview of its relationship with plaintiff: (1) finance charges in the form of a discount and (2) a four dollar filing fee.[10]

## The Discount

The Truth-in-Lending Act provides that:

Often a bank or finance company, under a prior agreement with the seller, has the option to accept or reject contracts which the seller wishes to assign or transfer to it. A Bank or finance company which desires to escape liability for violations of the Truth-in-Lending Act should ascertain whether there are any violations (for which it could be held liable) before accepting the contract attempted to be assigned. Also, a bank or finance company may in some circumstances take advantage of 15 U.S.C. § 1640(b) (allowing correction of error within fifteen days of discovering error).

10. Even before the hearing on her motion, the plaintiff apparently had decided not to pursue the contention that there was a Bank representative present when she signed the Agreement. Although she argued that the Bank was

Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, *and* imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable:

(1) Interest, time price differential, and any amount payable under a point, *discount,* or other system of additional charges.

15 U.S.C. § 1605(a)(1) (emphasis added). *See also* Regulation Z 12 C.F.R. § 226.-4(a)(1).

The plaintiff argues that her loan was discounted when her contract was transferred to defendant Bank, and that the discount should have been included in the finance charge pursuant to 15 U.S.C. § 1605(a)(1). The Consumer Credit Agreement signed by plaintiff and transferred to the Bank indicated that the amount financed was $2,061.75. However, the Bank gave J. W. Cartwright $1,860.00 for the transfer of the Agreement, and this amount was computed "[i]n accordance with the provisions of the Dealer Reserve Agreement and the Letter Agreement" entered into between Cartwright and Forsyth Bank. Answers to Interrogatories to Defendant

liable under the first sentence of § 226.6(d) of Regulation Z ("within its knowledge" test), the brief in support of her motion for summary judgment only addressed the two alleged violations mentioned above. There was no argument as to the alleged violations that occurred at the signing. At the hearing on the motion for summary judgment, counsel for plaintiff conceded that the only evidence he had on whether a Bank representative was present was plaintiff's testimony that someone named Steve told her that "Bob" was a loan financier for Forsyth Bank. The defendant Bank, by Baird Sills, stated that "[n]o representative, agent or employee of Forsyth Bank was present when the plaintiff executed the Consumer Credit Agreement." Affidavit of Forsyth Bank.

Forsyth Bank and Trust Company, Nos. 3(b) & (c), Feb. 22, 1977 (hereinafter Answers to Interrogatories to Forsyth Bank). The plaintiff asserts that her loan was discounted by at least $201.75 pursuant to a "discount system" prearranged by the Bank and Cartwright.[11]

■ The Court disagrees with plaintiff. The "discounted" amount, which is the difference between the amount financed and the amount the Bank paid, is not the type of discount or additional charge contemplated by 15 U.S.C. § 1605(a)(1). To hold that such amount needed to be included in the finance charge would distort the proper application of 15 U.S.C. § 1605(a)(1) and would unjustifiably impair the normal transaction of selling commercial paper for less than its face value. *Cf.* 12 C.F.R. § 226.406; FRB Letter No. 433 (Jan. 21, 1971). The cases of *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86 (8th Cir. 1976), *Kriger v. European Health Spa, Inc.,* 363 F.Supp. 334 (E.D.Wis.1973), and *Glaire v. LaLanne-Paris Health Spas, Inc.,* 12 Cal.3d 915, 117 Cal.Rptr. 541, 528 P.2d 357 (1974), are not applicable here. Those cases, in which the courts held "discounts" to constitute finance charges, involved the systematic discounting of *unitary* price contracts, where the price of a service was supposedly the same whether paid in cash or on credit, but where in reality most of the customers paid on credit. No unitary price contract is present in the instant case.

Therefore, because the contested amount was not a discount or additional charge that was required to be disclosed, the defendant Bank is not liable for failing to disclose it.

*The Filing Fee*

■ On November 10, 1976, fifty days after plaintiff signed the Consumer Credit Agreement, and forty-eight days after the contract was transferred to defendant Bank, a U.C.C. financing statement was filed with the Forsyth County Register of Deeds. The financing statement, securing the furniture plaintiff purchased on credit from Quality Distributors, indicated that the debtor was plaintiff, the secured party was Quality Distributors, and the assignee of the secured party was Forsyth Bank and Trust Company. The statement was signed by B. B. Sills, as assignee, and purportedly by plaintiff, as debtor. The only date on it was the date of recordation. The fee for filing the statement was four dollars ($4.00).

The plaintiff argues that the $4 filing fee had to be itemized or included in the finance charge, citing Regulation Z, 12 C.F.R. § 226.4(b)(1), which provides:

> If itemized and disclosed to the customer, any charges of the following types need not be included in the finance charge:
>
> (1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

*See also* 15 U.S.C. § 1605(d)(1). Plaintiff reasons that because the filing fee was not itemized, the four dollars should have been included in the finance charge.

Plaintiff argues that the financing statement was needed by defendant Bank to fully perfect its security interest in the furniture, and that the Bank knew of its need to file such a statement. However, there is no evidence that the Bank knew at the time plaintiff signed the Consumer Credit Agreement on September 21, 1976, that a financing statement would be filed. The Bank did not require a financing statement to be filed by Cartwright, although it had told him that "we feel it would be advisable for your company to file financing statements on all contracts which exceed $1,000." Letter from Baird Sills to James Cartwright, May 4, 1976. Quality Distributors had the initial decision as to

11. The plaintiff points to a statement in the Bank's Letter Agreement: "In reference to our recent discussions we are pleased to submit for your consideration the following proposal in connection with discounting consumer security agreements on a full recourse basis." Letter from Baird Sills to James Cartwright, May 4, 1976.

whether to file a statement. Forsyth Bank asserts that it "had no knowledge of the existence of the financing statement until November, 1976." Affidavit of Forsyth Bank. It was not until November 8, 1976,[12] that Baird Sills signed the financing statement for the Bank. On November 10, 1976, the Bank had the statement filed with the Register of Deeds, more than one and one-half months after plaintiff signed the Consumer Credit Agreement. Because the Bank had no knowledge at the time that plaintiff signed the Agreement that a financing statement would be filed, it had no duty to disclose the cost of the filing fee.

Furthermore, the Bank states that "[t]he $4 fee paid for filing the financing statement was paid by Forsyth Bank and absorbed as a cost of doing business by Forsyth Bank . . . [and the] fee paid . . . was not paid directly or indirectly by the plaintiff or Quality Distributors . . .." Affidavit of Forsyth Bank. To be included in the finance charge, a charge must be "payable directly or indirectly by the person to whom credit is extended." 15 U.S.C. § 1605(a). If a charge is not paid directly or indirectly by the customer, but is paid solely by the creditor and is absorbed by the creditor as a cost of doing business, that charge is not a finance charge which must be disclosed. *Cf.* FRB Official Staff Interpretation of March 21, 1977, No. FC–0054, 42 F.R. 18056, CCH Consumer Credit Guide ¶ 31,552; FRB Letter No. 1007 (Feb. 19, 1976), CCH Consumer Credit Guide ¶ 31,341; FRB Letter No. 895 (May 20, 1975), CCH Consumer Credit Guide ¶ 31,221. Therefore, the four dollar filing fee was not a finance charge which should have been disclosed by the defendant Bank.[13]

*Conclusion*

The defendant Bank, as extender of credit, was a creditor in the present case, as was defendant Edwards, the seller, as arranger of credit. The Bank had the potential liability in the credit-sale transaction for failing to make those disclosures required by the Truth-in-Lending Act and Regulation Z which were within its knowledge and the purview of its relationship with the plaintiff. However, because the Act did not require the "discount" amount and the filing fee to be disclosed, the defendant Bank is not liable for any violations of the Act.

Therefore, IT IS ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, DENIED, that the motion for summary judgment of defendant Forsyth Bank be, and the same hereby is, GRANTED, and that the plaintiff's action against defendant Forsyth Bank and Trust Company be, and the same hereby is, DISMISSED.

---

**12.** Prior to this date, the defendant Bank had learned that J. W. Cartwright was a fictitious name. It had also been in contact with the Federal Bureau of Investigation concerning "Cartwright."

**13.** Considering all of the circumstances of the present case, even if the $4 filing fee *should* have been itemized or included in the finance charge, such violation, being the only one that could be attributed to the Bank, would be *de minimus* and would not result in the Bank's liability.