A. CHARLES & COMPANY, Plaintiff-Appellee, *v.* JAMES BISHOP *et al.*, Defendants-Appellants.

First District (4th Division) No. 78-1342

Opinion filed August 23, 1979.

Joseph V. Bomba and Daniel W. Rosenblum, both of Legal Assistance Foundation, of Chicago, for appellants.

Irving B. Ribstein, Ltd., of Chicago (Eugene Lieberman, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendants, James and Henrietta Bishop, appeal from an order of the circuit court of Cook County granting plaintiff, A. Charles & Company's (Charles) motion to strike their counterclaim which was based on the Federal Truth in Lending Act (the Act). 15 U.S.C. §1601 *et seq.* (1970).

In December of 1972, the Bishops purchased a furnace from Western Home Heating, Inc. (Western). The Bishops were to pay the purchase

price and finance charges in monthly installments. Western assigned the retail installment contract, disclosure statement and promissory note to Charles following the sale and installation of the furnace.

In March of 1977, Charles filed suit against the Bishops seeking to recover the balance due on the promissory note. The note was attached to the complaint as an exhibit. The Bishops filed an answer, affirmative defense and counterclaim. The counterclaim sought statutory damages based on Charles' failure to comply with the disclosure provisions of the Act. The trial court granted Charles' motion to strike the counterclaim. On February 7, 1978, the Bishops asked the court to amend the order to show that the counterclaim was dismissed rather than struck and for a finding that there was no just reason to delay appeal. The court denied the motion and on May 22, 1978, entered judgment against the Bishops in the amount of $887.72 and costs.

Charles makes an initial argument that the Bishops did not properly preserve their right to appeal from the order striking their counterclaim. Charles contends the order is not appealable because there is nothing in the record to show that the Bishops elected to stand on their counterclaim or move to amend it and also because no judgment was entered on the counterclaim.

Charles relies on *Schoen v. Caterpillar Tractor Co.* (1966), 77 Ill. App. 2d 315, 222 N.E.2d 332, where the court suggested that a party who elects to stand on his complaint after it has been dismissed for failure to state a cause of action should so indicate to the trial court. The court in *Campbell v. Harrison* (1973), 16 Ill. App. 3d 570, 306 N.E.2d 643, rejected this "notification" suggestion, noting that *Schoen* did not *require* that such a notice is a necessary prerequisite for securing the right to appeal, and "nowhere in the Civil Practice Act is such a practice set forth." (16 Ill. App. 3d 570, 572, 306 N.E.2d 643, 645.) We do not believe that such notice is a prerequisite to the right to appeal.

Charles also argues there is no right of appeal because judgment was never entered on the counterclaim. We believe the striking of the counterclaim in this case was analogous to the denial of leave to file a counterclaim in *Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136, 233 N.E.2d 549, where the court found the order was final and appealable, because it determined that the counterplaintiff had no right to recover on his counterclaim. When the counterclaim before us was struck, the court did not grant leave to amend and the Bishops did not seek leave to amend. They did seek a finding, pursuant to Supreme Court Rule 304 (Ill. Rev. Stat. 1971, ch. 110A, par. 304), that there was no just reason for delaying an appeal and the court denied that motion. Because the order striking the counterclaim did not dispose of the case in its entirety, it was not appealable until judgment had been entered

558

on Charles' complaint and the Bishops could not file a notice of appeal until that time. Ill. Rev. Stat. 1971, ch. 110A, par. 304.

The remaining issue concerns the merits of the counterclaim itself. The Bishops argue the trial court erred in striking it; Charles contends the counterclaim failed to state a cause of action against an assignee.

The counterclaim alleges that Charles regularly extends or arranges for the extension of credit for which a finance charge is required and is thus a "creditor" within the terms of the statute; alleges that the documents executed in connection with the purchase of the furnace were assigned to Charles by Western; and alleges that each of the documents fails to comply with the Act's disclosure requirements. The contract and disclosure statement were attached as exhibits to the counterclaim.

The Act in general provides that "creditors" shall be liable for damages when a consumer can demonstrate certain credit disclosure violations in connection with a consumer credit transaction. At the time the documents in question were executed, "creditor" was defined as those who "regularly extend, or arrange for the extension of, credit * * *." (15 U.S.C. §1602(f) (1970).) Sections 115 and 130(d) provide for the liability of subsequent assignees of the defective documents where specified conditions are met. 15 U.S.C. §§1614, 1640(d) (1976).

Charles argues the counterclaim was properly dismissed because the conditions set forth in sections 115 and 130(d) were not pleaded.

The Bishops respond that it was not necessary for them to plead those conditions, which are applicable only to assignees, because the counterclaim alleged that Charles is not merely an assignee, but rather is a "creditor" within the terms of the statute. In making this argument the Bishops rely on a line of cases which applied the "conduit" theory, including *Meyers v. Clearview Dodge Sales, Inc.* (5th Cir. 1976), 539 F.2d 511; *Joseph v. Norman's Health Club, Inc.* (8th Cir. 1976), 532 F.2d 86; and *Garza v. Chicago Health Clubs, Inc.* (N.D. Ill. 1972), 347 F. Supp. 955.

In *Joseph*, a class action, the plaintiffs brought suit against a health club and the two finance companies to which the club had assigned promissory notes signed by the plaintiffs. The district court found that the finance companies were not "creditors" and thus had no duty to disclose to the plaintiffs. The Eighth Circuit reversed, finding that the finance companies were creditors. They explained:

"[W]here the third-party financer becomes intimately involved in the relevant credit transactions it may become liable as an extender of credit. Where a finance company becomes an integral part of the seller's financing program, the finance company must bear full responsibility for all disclosures required under the Truth in Lending Act." (532 F.2d 86, 91-92.)

The court found the finance companies were liable as extenders of credit because they dealt with the health club on a prearranged, systematic basis. The court noted "[t]he situation was no different than if the finance companies had gone to the Club with the prospective member, paid the Club for the membership and then taken the customer's note just as they did take it." (532 F.2d 86, 91.) The court concluded the club was serving as a mere conduit between the club members and the actual extenders of credit. This "conduit" theory cannot be invoked against an assignee in every case; the *Joseph* court noted it requires "more than isolated or even periodic discounting of consumer paper between commercial enterprises." 532 F.2d 86, 92.

When an assignee is sued as a "creditor" rather than under the more restrictive conditions of the assignee provisions, the critical issue is

> "* * * whether the assignee was so involved in the original decision to extend credit that it was not merely a firm who came on the scene after a lender had extended credit and purchased the loan, innocent of the original terms of the credit relationship and the disclosure statement, but, in fact, the intended creditor from the start." *Cenance v. Bohn Ford, Inc.* (E.D. La. 1977), 430 F. Supp. 1064, 1069.

The question before us thus becomes whether the allegation that Charles is a "creditor," without additionally pleading facts from which the basis for applying the "conduit" theory could be inferred, is sufficient to state a cause of action against an assignee of the documents containing the alleged disclosure violations.

Section 45 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 45) requires in part that objections to pleadings "shall point out specifically the defects complained of * * *." The motion to strike alleged certain defects which are not argued on appeal. The general allegation that Charles is a statutory "creditor" was not objected to. Because of the motion to strike's lack of specificity and because pleadings must be liberally construed (Ill. Rev. Stat. 1971), ch. 110, par. 33(3)), we conclude the counterclaim was sufficient to withstand the motion to strike.

For the foregoing reasons the order striking the counterclaim is vacated and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Vacated and remanded.

JOHNSON and ROMITI, JJ., concur.